Patricia J. JACKSON,
Appellant-Appellee,

v.

INDEPENDENT SCHOOL DISTRICT NO. 16 OF PAYNE COUNTY, Oklahoma, and Gerald Bradshaw, Harold Sare, Elizabeth T. Shindell, James E. Baker, and Delores Lambert, in their official capacities as members of the Board of Education of Independent School District No. 16 of Payne County, Oklahoma, Appellees-Appellants.

Nos. 53985, 53993.

Supreme Court of Oklahoma.

June 8, 1982.

Rehearing Denied July 28, 1982.

Fagin, Hewett, Mathews & Fagin by Ronald E. Stakem, Oklahoma City, for appellant-appellee Patricia J. Jackson.

Winfrey D. Houston, Stillwater, for appellees-appellants Independent School Dist. No. 16 of Payne County, Okl., et al.

HODGES, Justice.

The issues presented are whether: 1) a board of education may fail to renew the contract of a probationary teacher on the basis of alleged teaching deficiencies if the teacher does not receive written notification of the deficiencies and an opportunity to correct her job performance, and 2) a local board of education is required to state reasons or findings for its decision to non-reemploy a probationary teacher at the conclusion of a due process hearing.

Patricia J. Jackson, appellant, (teacher) was employed as a probationary teacher [1] by the Stillwater Board of Education (Board) to teach sixth grade at the Middle School. In accordance with 70 O.S.Supp. 1977 § 6–102.2, the Board published an evaluation policy. The teacher was evaluated three times on specified forms by her immediate supervisor, the principal of the Middle School, during the 1977–1978 school year. Three grading categories were provided on the form [A—area of strength; B—professionally competent, and C—area of concern]. The principal did not give an A rating to any of the teachers under his supervision. The teacher received B ratings, the highest rating given any teacher during the school year in twenty-five categories on the November 9, 1977 evaluation. However, a subsequent form was completed by the principal on November 14, 1977, because the teacher stapled permission slips on the clothing of several students who had failed to return the signed consent forms

---

1. Probationary teacher is defined by 70 O.S. Supp.1977 § 6–102.1(4) as a certified teacher who has completed less than three consecutive complete school years of teaching service in one school district under a written teaching contract as provided by law.

for a class field trip. The teacher received B ratings on the January 17, 1978 evaluation form. The superintendent did not witness the teacher's performance at any time during the year. However, her contract was not renewed by the Board based on the recommendation of the Superintendent, who refused to disclose any specific reasons for her nonreemployment. In response to a request for reasons of nonreemployment, the Board's counsel stated the reason was sub-standard professional performance. The teacher requested a hearing and after the hearing the Board affirmed the Superintendent's action but failed to state reasons or findings for its decision.[2] The teacher filed a declaratory judgment action. The teacher sought a determination by the trial court that the Board breached her contract or, in the alternative, committed ultra vires acts in violation of 70 O.S.Supp. 1977 §§ 6–103.2 and 6–103(A). The teacher also alleged a violation of her civil rights pursuant to 42 U.S.C. § 1983.[3] The court found that the teacher was not afforded due process because of the failure to state reasons or findings or to disclose the evidence upon which its decisions are made

and awarded damages of $1,000.00 and an Attorney fee of $1,250.00; but it held that § 6–103.2 was inapplicable because the principal had no reason to believe the teacher would be nonreemployed. The teacher and the Board appealed and the causes were ordered consolidated.

I

The teacher does not seek a review on the merits of cause for dismissal, rather her appeal is limited to a very narrow procedural perspective.[4] The teacher asserts that 70 O.S.Supp.1977 § 6–103.2 establishes as conditions precedent to a decision by a board of education to nonreemploy[5] a probationary teacher that: 1) the teacher must be admonished concerning performance which may lead to dismissal followed by administrative assistance and 2) given an opportunity to improve over a period not to exceed two months. The Board contends that § 6–103.2 is inapplicable because the principal had no reason to believe that the teacher's conduct would lead to nonreemployment;[6] and that the Superintendent and

---

2. At the conclusion of the hearing, the Board went into executive session to consider the evidence. The Board returned to the public meeting session and the following motion was approved by a 4–1 vote:

"I think that everybody realizes that this has been a difficult decision for us, and we have deliberated a long time, but personally, I feel that we have followed the procedures required by Senate Bill 249. I feel that we have weighed the evidence that has been presented. I feel at this time that the Board should uphold its past decision, and I make a motion that we follow our past decision and do not re-employ Mrs. Pat Jackson."

3. It is provided by 42 U.S.C. § 1983:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

4. The decision of the Board on the question of a probationary teacher's dismissal or non-reemployment is final and nonappealable pursuant to 70 O.S.Supp.1977 § 6–103.4(E).

5. Nonreemployment is a statutorily defined word of art which means the non-renewal of a teacher's contract. *Maupin v. Ind. Sch. Dist. No. 26 of Ottawa Co.*, 632 P.2d 396, 397 (Okl. 1981).

6. It is provided by 70 O.S.Supp.1977 § 6–103.2:

"Whenever a principal who has the administrative responsibility under the supervision of the superintendent of a school district to plan, manage, operate and evaluate the educational program of a particular school attendance area and who has carried out the provisions of Section 2 of this act believes that it is necessary to admonish a teacher in the district for a reason he believes may lead to the teacher's dismissal or nonreemployment, the principal shall:

"1. Bring the matter to the attention of the teacher, in writing, and make a reasonable effort to assist the teacher to correct whatever appears to be the cause for potential dismissal or nonreemployment; and

"2. Allow a reasonable time for improvement, which time shall not exceed two (2) months. The nature and gravity of the teach-

Board of Education, pursuant to 70 O.S. Supp.1977 § 6–103.4, had authority to non-reemploy a teacher without either admonishment by the principal, or allowing reasonable time for improvement.[7]

■ This question turns on a matter of statutory construction. The statute states that "Whenever a superintendent of a school district determines that cause exists for the dismissal or nonreemployment of a teacher he shall submit a recommendation in writing to the board of education of such school district."[8] The local board of education may also determine on its own volition not to reemploy a teacher. The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in the statute.[9] The purposes of the admonishment statute are to prevent arbitrary and unreasonable evaluations by principals and to provide assistance for teachers with remedial classroom problems. The enforcement of the admonishment statute as a condition precedent would preclude evaluation for one-third (⅓) of the school year because the second evaluation must be by February 10; and further, it would vest the principal with sole authority to arbiter the teacher's performance. Meaningful access to the superintendent and the board by students and parents would be precluded by such an arrangement.

Had the Legislature intended that the admonishment statute § 6–103.2 be employed as a condition precedent to nonreemployment, this intention would have been clearly expressed in the statute. It is apparent that there was no legislative intent that the statute apply to the superintendent. The statute is devoid of ambiguity. There is no room for construction or provision for further inquiry when the statute plainly speaks.[10] Because the language of the statute is plain and unambiguous and its meaning clear, no occasion exists for the operation of rules of construction and its evident meaning must be accepted.[11]

## II

The Board contends that the trial court erred when it determined that the teacher was not given reasons or findings upon which the Board's decision was made.

The teacher counters that 70 O.S.Supp. 1977 § 6–103.4(E)[12] requires that she be

---

er's conduct shall be considered in determining what length of time would be reasonable. If the teacher does not correct the cause for a potential dismissal or nonreemployment, within a reasonable length of time, the principal shall make a recommendation to the superintendent of the school district for the dismissal or nonreemployment of the teacher."

7. The pertinent portions of 70 O.S.Supp.1977 § 6–103.4(A), (B) state:

"A. Whenever a superintendent of a school district determines that cause exists for the dismissal or nonreemployment of a teacher employed within the school district, he shall submit a recommendation in writing to the board of education for such school district. In the case of a tenured teacher, the recommendation shall contain the one or more statutory grounds for the potential dismissal or nonreemployment. The recommendation for the dismissal or nonreemployment of either a tenured or a probationary teacher shall be approved or rejected upon a majority vote of the board's members.

"B. If the local board of education approves the recommendation of the superintendent, or determines on its own volition that a tenured teacher should be dismissed or nonreemployed,

the board shall cause written notice of the dismissal or nonreemployment to be mailed by certified mail, restricted delivery, with return receipt requested, to the teacher who is the subject of the action: ... In the case of a probationary teacher, the notice shall state the right of the teacher to have a due process hearing conducted by the board of education...."

8. See note 4, supra.

9. *Central Liquor v. Okla. Alcoholic Bev. Control Bd.*, 640 P.2d 1351, 1354 (Okl.1982).

10. See *Smith v. State Bd. of Equalization*, 630 P.2d 1264, 1267 (Okl.1981) (Involves constitutional construction).

11. *Cavett v. Geary Bd. of Ed.*, 587 P.2d 991, 993 (Okl.1978).

12. It is provided by 70 O.S.Supp.1977 § 6–103.-4(E):

"If a probationary teacher fails to notify the clerk within the ten-day period of time of his desire to have a due process hearing on his dismissal or nonreemployment conducted by

afforded all procedural due process rights guaranteed by the Oklahoma and United States Constitutions, including a statement of reasons or findings for the decision not to reemploy her.

Historically, there has been a distinction drawn between a right and a privilege for the application of the due process clause. The distinction seems to have been discarded in favor of the concept of entitlement which is based on expectations derived from independent state law. Entitlements have become synonymous with state fostered justifiable expectations which are not equated with a right when given but which are protected by due process when curtailment is threatened.[13]

Title 70 O.S.Supp.1977 § 6–103.4(B) entitles a probationary teacher to a due process hearing. Although the statute does not expressly state that findings must be made, the State Board of Education Policy Bulletin and Guide for Implementing Teacher Hearing Procedures provides that the right to a due process hearing entitles the teacher to be given notice and an opportunity to be heard; granted a reasonable time to pre-

pare for the hearing; be heard before a fair and impartial tribunal; advised of the decision reached by the board and a general explanation of the basis upon which the decision was reached,[14] and a written transcript of the proceedings.

Notice is a jurisdictional requirement as well as a fundamental requisite of due process. Due process requires adequate notice and a realistic opportunity to appear at a hearing in a meaningful time and in a meaningful manner. The right to be heard is of little value unless adequate notice is given, and due process is violated by the mere act of exercising judicial power upon process not reasonably calculated to apprise interested parties of the pendency of an action. Procedural due process of law contemplates a fair and open hearing before a legally constituted court or other authority with notice and an opportunity to present evidence and argument, representation by counsel, if desired, and information concerning the claims of the opposing party with reasonable opportunity to controvert them.[15]

the local board of education, the teacher shall be deemed to have waived his right to the hearing and the initial determination of his dismissal or nonreemployment by the board of education shall become final and nonappealable. If, within the ten-day period of time, the probationary teacher notifies the clerk of the board of education of his desire to have a due process hearing on his dismissal or nonreemployment conducted by such board, the board shall, as soon as possible, hold a hearing. At the hearing the probationary teacher shall be afforded all such procedural due process rights as are guaranteed by the Oklahoma and United States Constitutions. At the conclusion of the hearing, the local board of education shall render a final and nonappealable decision on the question of the probationary teacher's dismissal or nonreemployment."

**13.** *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548, 561 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 261–63, 90 S.Ct. 1011, 1016–17, 25 L.Ed.2d 287 (1970). Nilsson, "Constitutional Law," 13 Creighton L.R. 1248, 1259 (1980).

In *Roth* the Court in what seemed to be a deviation from previous decisions, employed a two-step analysis to determine whether Roth had a right to a statement of reasons and a hearing. The first step is to determine

whether due process requirements apply by looking to the nature of the interest at stake, specifically whether it is a property or liberty interest protected by the fourteenth amendment. It is only after this step has been completed and an interest has been found that the process of weighing the plaintiff's interest in securing his job against the institution's need for unfettered discretion in its employment practices comes into play. This balancing process is applied in the second step to determine the form of hearing and the extent of procedural due process required.

**14.** See Oklahoma State Board of Education Policy Bulletin and Guide For Implementing Senate Bill No. 249 (Procedures And Conduct For Due Process Hearings Of Probationary Teachers) Ch. XI(F) (1977). See also L. French, "Oklahoma's Newest Teacher Tenure Law, An Evaluation and Analysis of Senate Bill No. 249" (Title 70 O.S.Supp.1977 § 6–103 et seq.) 50 OBJ 657, 659 (1979).

**15.** *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971); *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Schroeder v. New York,* 371 U.S. 208, 211, 83 S.Ct. 279, 281, 9 L.Ed.2d 252, 89 A.L.R.2d 1398 (1962); *Mullane*

The purpose of any due process proceeding is to afford the opportunity to each person to present evidence and arguments in a forum which provides fair and equal justice. It seems not only fair, courteous, and an exercise of due process, but an efficient administration of justice for notice to be given [16] concerning what deficiencies resulted in the teacher being non-reemployed. "No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and an opportunity to meet it. Nor has a better way been found for generating the feeling that justice has been done." [17] The issue is not merely the appearance of justice, but from a perspective that treats process as intrinsically significant, the very essence of justice. Whatever the outcome, a due process hearing permits the affected person the right to be heard from and the right to be told why a decision is being made in a certain way.[18]

Because 70 O.S.Supp.1977 § 6–103.4(E) does not require the making of findings of fact, the school board contends it was not required to do so. The Minnesota Supreme Court was faced with the same problem and a similar statute in *Morey v. School Board of Ind. Schl. Dist. No. 492,* 268 Minn. 110, 128 N.W.2d 302, 307 (1964).[19] The Court said:

"In a case such as the present one, where the school board, acting in a quasi-judicial capacity [20] might have based its resolution on any or all of several grounds, findings of fact are vital to prevent substitution of the reviewing court's judgment for that of the school board's. Without findings of fact, the trial court had no way of knowing upon which of the four charges the school board based its decision. If the trial court were to review the merits of the case without findings of fact, there would be no safeguard against judicial encroachment on the school board's function since the trial court might affirm on a charge rejected by the school board."

It is fundamental that an absence of required findings is fatal to the validity of administrative decisions even if the record discloses evidence to support proper findings.[21] Findings of an administrative agen-

---

*v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–15, 70 S.Ct. 652, 656–57, 94 L.Ed. 865, 872–74 (1949); *Riverside & Dan River Cotton Mills v. Menefee,* 237 U.S. 189, 35 S.Ct. 579, 59 L.Ed. 910 (1915); *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363, 1369 (1914); *Bomford v. Socony Mobil Oil Co.,* 440 P.2d 713, 719 (Okl.1968); *Simms v. Hobbs,* 411 P.2d 503, 510 (Okl.1966); *Vernon v. State,* 245 Ala. 633, 18 So.2d 388, 389 (1944).

16. See *Friar v. Sirloin Stockade,* 635 P.2d 597, 598–99 (Okl. Oct. 6, 1981).

17. J. Frankfurter concurring in *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 171–172, 71 S.Ct. 624, 648–649, 95 L.Ed. 817, 853–854 (1951).

18. L. Tribe, American Constitutional Law, Ch. 10 § 7 p. 503 (The Foundation Press, Inc. 1978).

19. This argument was rejected in *Morey* which quoted 2 Davis, Administrative Law Treatise § 16.05:

"The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearing and judicial review, and keeping agencies within their jurisdiction."

See also *Ganyo v. Ind. Schl. Dist. No. 832,* 311 N.W.2d 497, 500 (Minn.1981).

20. Quasi-Judicial power is a term applied to the action of public administrative officers or boards which investigate facts or ascertain the existence of facts; draw conclusions from them as a basis for official action; and exercise discretion of a judicial nature in connection with and incidental to the administration of matters entrusted to or assigned to the officers or board. *Winters v. Governor's Special Committee,* 441 P.2d 370, 372 (Okl.1967); *Green v. Bd. of Com'rs. of Lincoln Co.,* 126 Okl. 300, 259 P. 635, 637 (1927).

21. *Brown v. Banking Bd.,* 512 P.2d 166, 168 (Okl.1973). Some cases have held that a statute which does not require express findings of fact as a prerequisite to valid administrative action is unconstitutional. See *Rohrer v. Milk Control Bd.,* 121 Pa.Super.Ct. 281, 184 A. 133 (1936) rev'd on other grounds, 322 Pa. 257, 186 A. 336 (1936); see also Annot., "Necessity,

cy acting in a quasi-judicial capacity should contain a recitation of basic or underlying facts drawn from the evidence sufficiently stated to enable the reviewing court to intelligently review the decision and ascertain if the facts upon which the order is based create a reasonable basis for the order.[22] The protection afforded by findings assures that justice is administered according to facts and law, and not through Star Chamber techniques.[23] The crux of the matter is that democracy implies respect for the elementary rights of the person, however suspect or undeserving; a democratic government must practice fairness—and fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights.[24] Boards of Education are required even without statutory requirements to give notice in advance of the hearing of the reasons for nonreemployment and make findings of fact on issues presented in any due process hearing.

AFFIRMED.

IRWIN, C. J., BARNES, V. C. J., and LAVENDER, DOOLIN, OPALA and WILSON, JJ., concur.

HARGRAVE, J., concurs in Part I; dissents to Part II.

SIMMS, J., dissents.

---

Form And Contents of Express Finding Of Fact To Support Administrative Determinations," 146 A.L.R. 209, 211 (1943).

**22.** *Dunlap v. Bachowski*, 421 U.S. 560, 571, 95 S.Ct. 1851, 1859, 44 L.Ed.2d 377, 389 (1975); *State v. Guardian Funeral Home*, 429 P.2d 732 (Okl.1967).

**23.** *Saginaw Broadcasting Co. v. F. C. C.*, 96 F.2d 554, 559 (D.C.1938) *cert. den'd.* 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 cited with approval in *Okl. Insp. Bur. v. State Bd. for Prop. & Cas. Rates*, 406 P.2d 453, 457 (Okl.1965).

**24.** See note 17, supra.