Dear Mr. Ware,
The Attorney General has received your request for an official opinion asking, in effect:
 In order to qualify for the increase in retirement benefits authorized for members of the Teachers' Retirement System under 70 O.S. 17-116.2(H) (1984), must members of the System make payments equalling the sum of money that should have been paid by their employers as retirement contributions, in addition to the sums outlined in the Section as due from the employees?
The Teachers' Retirement system of Oklahoma was organized by the Legislature for the express purpose of "providing retirement allowances and other benefits . . . for teachers of the State of Oklahoma." 70 O.S.17-102 (1981). Under current law, both individual members of the System and their respective public employers each make contributions to the System equalling five percent (5%) of the member's "regular annual compensation," up to a maximum annual compensation figure of $25,000.00.70 O.S. 17-116.2(B), 70 O.S. 17-116(C) (1984).
"Regular annual compensation," as used in the statutes governing the System, is defined in 70 O.S. 17-101(25) (1984) thusly:
 "`Regular annual compensation' means base salary and fringe benefits. For purposes of this definition, `fringe benefits' means any additional financial payments including, but not limited to, annuities, pension plans, insurance policies or any other financial compensation."
In 1984, the Legislature amended 70 O.S. 17-116.2 (1981) by adding a new subsection, Subsection (H). Title 70 O.S. 17-116.2(H) (1984) provides:
 "Any member whose regular annual compensation was not determined as provided for by law may pay the five percent (5%) contribution on such amount not included in the member's regular annual compensation and receive credit for such amount in the calculation of the member's benefit."
You ask, in light of this provision, whether an individual seeking to utilize 70 O.S. 17-116.2(H)'s remedial language must make payment to the System not only of the five percent (5%) figure set forth covering his own contributions, but also of the five percent (5%) figure usually required of employers under 70 O.S. 17-116.2(C).
The fundamental rule of statutory construction is to attempt to ascertain the intention of the Legislature, and, if possible, to give effect to that intention as expressed in the statute in question. Jacksonv. Ind. School Dist. No. 16, Payne County, 648 P.2d 26 (Okla. 1982). In this regard, legislative silence, when it has the authority to speak, may be considered as giving rise to an implication of legislative intent.City of Duncan v. Bingham, 394 P.2d 456 (Okla. 1964).
On its face, 70 O.S. 17-116.2(H) does not require that a member of the System make any payment, in order to avail himself of the statute, beyond the five percent (5%) figure deducted by the member's employer from his regular annual compensation. No parallel mandate requiring payment of additional sums equalling what the member's employer should have paid in contributions is evidenced.
This omission is significant, because the Legislature has seen fit to specifically require such parallel payments for employer's contributions by individual public employees in another situation analogous to this payback provision. Title 11 O.S. 50-126 (1981), regarding the crediting of prior service credit for members of the Police Pension and Retirement System, provides:
 "3. Upon a favorable determination of the eligibility for and amount of service credit under this section, the State Board shall require the member to pay an amount equal to either of the following, whichever is greater, into the participating municipality's account for service before January 1, 1981:
 "a. the total contributions which would have been paid by the member, the participating municipality, and the state, if the member had been employed by the participating municipality during the period of time such credit is applied for, plus five percent (5%) annual interest on such total contributions, or
 "b. the total contributions actually paid by the member, the member's participating municipality, and the state, during the period of time such credit is applied for, plus five percent (5%) annual interest on such total contributions;
 "The State Board shall determine the method and time limit for the payment of these funds, but in no case shall the time limit exceed five (5) years[.]"
The failure of the Legislature to specifically mandate that a member of the System must also pay an amount of money equalling the contributions his employer should normally have made, in addition to his own five percent (5%) contribution figures, when it clearly has chosen to require such parallel payments in 11 O.S. 50-126(3) (1981), above, gives rise to a strong implication that this omission by the Legislature was intentional. City of Duncan v. Bingham, supra. This conclusion is bolstered by the time-honored rule of construction that laws granting pensions and retirement benefits to public employees should be construed liberally and, in cases of doubt, resolved in favor of the employees benefited. See, City of Ardmore, ex rel. Firemen's Relief and PensionBd. v. Ozment, 467 P.2d 502 (Okla. 1970); Bd. of Trustees of Firemen'sRelief and Pension Fund, Tulsa, Oklahoma v. Naughton, 68 P.2d 845 (Okla. 1937).
It is, therefore, the official opinion of the Attorney General that inorder to qualify for the increase in retirement benefits authorized formembers of the Teachers' Retirement System under 70 O.S. 17-116.2(H)(1984), members of the System are not required to make payments equallingthe sum of money that should have been paid by their employers asretirement contributions, in addition to the sums outlined in the sectionas due from the members themselves.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
MICHAEL SCOTT FERN, ASSISTANT ATTORNEY GENERAL