Dear Honorable Giles,
The Attorney General has received your request for an official opinion asking, in effect:
 Is there a conflict between the provisions of 70 O.S. 5-135(F) (1981), which require receipt of services by a school district prior to payment for such services, and those of 68 O.S. 2481.4 (1981), which require each school district to appropriate funds to the county assessor for expenditure in the county's revaluation program?
Title 68 O.S. 2481.1 et seq. (1981), as amended, provide for a comprehensive program of revaluation by the county assessor of all taxable property within a county. 68 O.S. 2481.3 requires the assessor to make adequate provision within his or her budget to effect revaluation. The method of financing the costs of revaluation is described in 68 O.S.2481.4, and provides that each county assessor shall prepare a special budget for that purpose. This special budget is filed by the assessor with the county equalization and excise board, which in turn apportions the costs of revaluation among the various recipients of ad valorem taxes. 68 O.S. 2481.4. The cost of revaluation as apportioned to each recipient is then added to or included in each such recipient's budget and, as provided in 68 O.S. 2481.4, the "mill rates to be established by the board for each such recipient for the current year shall include and be based on such amounts." The section then provides that:
 "[T]he board and each such recipient shall appropriate the said amounts to the county assessor for expenditure for the comprehensive program of revaluation."
The legislative scheme set forth in 68 O.S. 2481.3 and 68 O.S. 2481.4
contemplates that the county assessor should actually maintain a special budget, and the plain language of 68 O.S. 2481.4 makes clear that the Legislature intended that the monies earmarked for the revaluation costs should be assigned to the assessor "for expenditure," so that the special budget is, in fact, funded prior to revaluation. School districts are, of course, a major recipient of ad valorem tax proceeds, and are required by68 O.S. 2481.4 to appropriate funds for use by the county assessor in the revaluation program.
However, as is noted in your question, 70 O.S. 5-135(F) (1981) provides for payment by school districts for services rendered "[a]fter
satisfactory receipt of the services[.]" (Emphasis added). The issue is thus whether appropriations to the county assessor under 68 O.S. 2481.4
may be made by a school district operating under the accounting system provided in 70 O.S. 5-135 (1981) prior to actual revaluation by the assessor of the taxable property in the county.
70 O.S. 5-135 (A) authorizes a school district to utilize the system of accounting contained therein when:
 "initiating, recording and paying for all purchases, salaries, wages or contractual obligations
due from any of the funds under the control of such board of education, except that the provisions contained herein shall not apply to the sinking fund and student activity fund."
It is well settled that the fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in the statute. Jackson v.Independent School District No. 16, 648 P.2d 26 (Okla. 1982). This is to be accomplished by giving terms used in an act, if not specifically defined, their plain, ordinary meaning. In re Certification of Questionof State Law, 560 P.2d 195 (Okla. 1977). Applying these rules, it is clear that the contribution of the school district to the assessor's special budget for revaluation is not pursuant to a "purchase," nor is it a "wage" or "salary," paid by the district, since the assessor's salary, fixed by statute according to the formula set forth at 19 O.S. 180.58 et seq. (1981), as amended, is not paid from this fund. See, 68 O.S. 2483,68 O.S. 2485, 68 O.S. 2481.4 (1981); see also, A.G. Opin. No. 83-243.
Moreover, neither the duty of the school district to appropriate funds to the assessor's budget, nor the duty of the assessor to revalue, is a "contractual obligation," owed by either party to the other. A contract is an agreement to do or not to do a certain thing, 15 O.S. 1 (1981), and the existence of a contract is dependent, among other things, upon free mutual consent of the parties, and "[s]ufficient cause or consideration."15 O.S. 2, 15 O.S. 51 (1981); Powers Restaurants Inc. v. Garrison,465 P.2d 761 (Okla. 1970). Both the duty of the school district to appropriate funds and the duty of the assessor to perform revaluation arise from statutory mandates of the Legislature. Each is a separate and independent obligation and neither of such obligations is dependent upon consent by, consideration for, or performance from the other. While the assessor undoubtedly performs a service in revaluation which benefits the school district, this service arises from a statutory obligation to perform his or her duties as prescribed in the oath of office. See, 68O.S. 2402 (1981). There is thus no "contractual obligation" by the school district to appro priate funds to the assessor's special budget, thus 70O.S. 5-135(F) is inapplicable in that regard.
As we observed in A.G. Opin. No. 83-243, prior to the 1967 enactment of the special "revaluation program," several statutes in title 68 provided for the continuous adjustment and correction by the county assessor of assessed valuations of property. See, e.g., 68 O.S. 2435 and 68 O.S.2436. However, continuous valuation of property could only be performed within the confines of the assessor's annual budget. Thus, as we noted in that opinion, to facilitate the costly revaluation process, and to ensure that monies would be available for its accomplishment within the five year maximum time frame allowed, 68 O.S. 2481.3 and 68 O.S. 2481.4 were enacted as a mechanism for funding the costs borne by the assessor in accomplishing revaluation.
It is, therefore, the official opinion of the Attorney General thatthere is no conflict between the provisions of 70 O.S. 5-135(F) (1981),which require receipt of services by a school district prior to paymentfor such services, and those of 68 O.S. 2481.4 (1981), which require eachschool district to appropriate funds to the county assessor forexpenditure in the county's revaluation program, since the requirementthat a school district fund a portion of the revaluation budget is astatutory duty, not a contractual obligation.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
SUSAN BRIMER AGOSTA, ASSISTANT ATTORNEY GENERAL