Dear Executive Director, Gordon L. Hare,
¶ 0 This office has received your letter requesting an official Opinion addressing the following questions:
1. Do the provisions of 3A O.S. 1991, § 205.2(D) allow anorganization licensee to submit a form of security to the HorseRacing Commission ("the Commission") other than a bond issued bya surety company licensed to do business in Oklahoma?
 2. If so, would an alternative form of security submitted tothe Commission by the organization licensee, such as a cash bond,certificate of deposit, or irrevocable letter of credit serve thepurposes intended by the provisions of 3A O.S. 1991, §205.2(D)?
¶ 1 Title 3A O.S. 1991, § 205.2[3A-205.2](D) provides:
 Prior to the issuance of an organization license, the applicant shall file with the Commission a bond
payable to the State of Oklahoma in an amount determined by the Commission which is not less than Two Hundred Thousand Dollars ($200,000.00) for a license to conduct parimutuel horse races and not more than the total financial liability of the organization licensee throughout the race meeting for which the organization license is requested, executed by the applicant and a surety company or companies authorized to do business in this state, and conditioned upon the payment by the organization licensee of all taxes and other monies due and payable pursuant to the provisions of the Oklahoma Horse Racing Act and all purses due and payable, and upon the fact that, upon presentation of winning tickets, the organization licensee will distribute all sums due to the patrons of pari-mutuel pools. The financial liabilities incurred by the organization licensee in the form of real estate mortgages shall not be included in the determination of the bond amount.
3A O.S. 1991, § 205.2[3A-205.2](D) (emphasis added).
¶ 2 Whether the giving of an irrevocable letter of credit, cashier's check, cash or some other form of security may be substituted for the statutorily required bond executed by one or more sureties involves the determination of the nature of the instruments sought to be substituted and the application of the principles of statutory construction to the statute itself.
 I. THE NATURE OF SECURITY INSTRUMENTS
¶ 3 A bond executed by a principal and one or more sureties establishes a particular secured relationship which is generally defined as the "Obligation of guarantor to pay a second party upon default by a third party in the performance the third party owes to the second party." Black's Law Dictionary 164 (1979). As indicated from the two passages set forth below, different forms of security establish different relationships among the parties involved. The following two passages illustrate differences among surety contracts, guarantees and letters of credit:
 A surety and guarantor have this in common, that they are both bound for another person; yet there are points of difference between them. A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration. He is an original promisor and debtor from the beginning, and is held ordinarily to every known default of his principal. On the other hand, the contract of guarantor is his own separate undertaking, in which the principal does not join.
Id. at 1293.
 But a true letter of credit arrangement is not a contract of guaranty, even when the letter fulfills some of the functions of a guaranty, as with the "standby" variety under which the issuer is to pay only if papers certifying default of the customer are presented. Such a letter differs from a guaranty in two major respects. First, as already suggested, the obligation of a guarantor is secondary while the obligation of an issuer is primary.
. . . .
 Second, the obligation of a guarantor cannot mature unless the principal debtor has actually defaulted.
White and Summers, Uniform Commercial Code, 713 (West 1980).
¶ 4 Additionally, the Oklahoma Court of Appeals has also recognized that different forms of security establish different relationships among the parties. Dubuque Packing Company, Inc.v. Fitzgibbon, 599 P.2d 440 (Okla.Ct.App. 1979). In that case the court, analyzing whether a certain document was a guaranty or a letter of credit, stated:
 In § 5-103(1)(a) the U.C.C. defines "credit" or "letter of credit" as
 . . . an engagement by a bank . . . made at the request of a customer and of a kind within the scope of this Article (Section 5-102) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. . . .
 The term "guaranty" is defined as "a promise to answer for the debt, default or miscarriage of another person." 15 O.S. 1971, § 321[15-321].
 From a reading of these two definitions a key difference seems to lie in one of the conditions for liability, i.e. the Buyer's default.
Id. at 441.
¶ 5 Clearly then, different forms of security provide for performance under different conditions and different levels of protection to the entity for whose benefit the security is sought. Whether the Commission may substitute another form of security, which may or may not provide equivalent protection to a bond, must now be addressed.
 II. STATUTORY CONSTRUCTION OF LEGISLATIVE PRONOUNCEMENTS REQUIRING SECURITY
¶ 6 Having determined that different forms of security establish different relationships among the parties involved, the next inquiry is whether the Oklahoma Legislature, in the way it has crafted and amended various statutes, recognizes the differences in various forms of security. Finally, we must determine whether, by explicitly providing one or more forms of security it deems acceptable, the Legislature has limited the ability of the entity requiring the security to permit substitution of any other form.
¶ 7 It is undeniable that the Legislature recognizes different forms of security and, when desired, has added forms of acceptable security. In the Oklahoma Public Buildings and Public Works Act only one form of acceptable security from a contractor was recognized until 1986. The original statute provided:
 Whenever any public officer shall, under the laws of the State of Oklahoma, enter into any contract in any sum exceeding One Thousand Dollars ($1,000.00) with any person or persons, for the purpose of making any public improvements or constructing any public building or making repairs to the same, such officer shall take, from the party contracted with, a bond with good and sufficient sureties to the State of Oklahoma, in a sum not less than the sum total of the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor and materials furnished by any supplier and consumed in the construction of said public building or in making said public improvements; and such repairs to and rental of machinery and equipment as may be furnished by a subcontractor to the person or persons contracting with the public officer or instrumentality.
61 O.S. 1961, § 1[61-1] (emphasis added).
¶ 8 In 1986 the Legislature amended the statute to permit a second acceptable form of security:
 1. furnish a bond with good and sufficient sureties payable to the state in a sum not less than the total sum of the contract; or
 2. cause an irrevocable letter of credit containing such terms as may be prescribed by the Office of Public Affairs to be issued for the benefit of the state by a financial institution insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation in a sum not less than the total sum of the contract.
61 O.S. 1991, § 1[61-1](A).
¶ 9 Likewise, in 1986, the Legislature amended another section of the Competitive Bidding Act to permit acceptable security to include a letter of credit as well as a bond. 61 O.S.Supp. 1994,§ 113[61-113](B).
¶ 10 Application of the rules of statutory construction, in light of the actions of the Legislature as to the analogous statutes described above, mandates that the Commission not permit substitution of a form of security other than that set forth in the statute.
¶ 11 The determination of legislative intent is the goal of statutory construction. Jackson v. Independent School DistrictNo. 16 of Payne County, 648 P.2d 26 (Okla. 1982). There is no room for construction or provision for further inquiry when the Legislature plainly expresses the intent. Hughes Drilling Co. v.Morgan, 648 P.2d 32 (Okla. 1982). Where the language of a statue is plain and unambiguous, there is no room for construction.Cavett v. Geary Board of Education, 587 P.2d 991 (Okla. 1978).
¶ 12 Here, the language of the Oklahoma Horse Racing Act is plain and unambiguous; only one form of security, a bond executed by one or more sureties, is authorized. No other form is authorized nor may such authorization be assumed absent legislative enactment.[1] Moreover, the Legislature has, when it has wished, authorized more than one form of security. Any change to permit one or more additional forms of security is within the province of the Legislature.[2]
 ¶ 13 It is, therefore, the Opinion of the Attorney Generalthat:
 The provisions of 3A O.S. 1991, § 205.2(D) do not allow anorganization licensee to submit a form of security to the Stateother than a bond issued by a surety company licensed to dobusiness in Oklahoma. Because the answer to the first questionposed is no, the second question need not be addressed.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GRETCHEN GROVER HARRIS ASSISTANT ATTORNEY GENERAL
[1] Absent a legal and factual analysis of each and every instrument sought to be substituted for the statutory requirement, no entity charged with requiring security could ensure itself that the protection provided by the substitute was equivalent to the protection required by the statute. No explicit authority to make such a factual analysis or substitution is contained in the statute being reviewed.
[2] That legislative action is necessary to change the form or requirements of a security is further supported by the strict construction of the sections of the public buildings and works statutes quoted above. See New York Casualty Co. of New York v.Wallace Tiernan, Inc., 50 P.2d 176 (1935), which implicitly required strict adherence to the requirements of the security required in the Public Buildings and Public Works Act.