ANATOLIA RESTAURANT v. BURTON
2022 OK CIV APP 8
509 P.3d 72
Case Number: 119800
Decided: 03/04/2022
Mandate Issued: 03/30/2022
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2022 OK CIV APP 8, 509 P.3d 72

 

ANATOLIA RESTAURANT, LLC, and TRAVELERS INDEMNITY CO. OF AMERICA, Petitioners,
v.
AMANDA BURTON and THE WORKERS' COMPENSATION COMMISSION, Respondents.

APPEAL FROM THE OKLAHOMA WORKERS' COMPENSATION COMMISSION

SUSTAINED

Mia C. Rops, AYIK & ASSOCIATES, Oklahoma City, Oklahoma, for Petitioners

Daniel M. Davis, LAW OFFICE OF DANIEL M. DAVIS, Oklahoma City, Oklahoma, for Respondent

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Anatolia Restaurant, LLC, and Travelers Indemnity Co. of America (collectively, Employer) seek review of an order of the Oklahoma Workers' Compensation Commission affirming an order of an Administrative Law Judge (ALJ). The ALJ found Amanda Burton (Claimant) sustained a compensable injury to the left knee. Employer asserts on appeal that Claimant's injury should have been set forth with greater specificity. However, based on our review, we sustain.

BACKGROUND

¶2 Claimant alleged she sustained a "sprain/strain" to her left knee on January 3, 2019, as a result of slipping and falling on an ice- and snow-covered sidewalk outside her place of employment. At the hearing before the ALJ held in June 2020, Claimant requested "an order of compensability for injury to the left knee," as well as "a Form A physician." Employer denied Claimant sustained a compensable injury in the course and scope of her employment, asserting that when Claimant fell she "had clocked out for the day, [and] was in a parking lot that was not owned[,] maintained [and] operated by [Employer]." In addition, Employer requested that, if the injury was found to be compensable, the ALJ make "a specific finding of what the injury is." Employer stated: "We know that it's the left knee, but based on the medical evidence submitted, along with the July 2019 MRI, [Employer] would like to know what the injury that was caused by her accident is."

¶3 Claimant testified at the hearing that she had never previously injured her left knee, though she had previously injured her right knee. She also testified regarding the circumstances of the accident. She testified "[her] feet [came] right out from underneath [her]" on the icy sidewalk outside her place of employment -- a restaurant -- where she had been working the night shift. She stated the fall occurred after she "turned around [to] make sure [the doors] were locked" after "closing up." She testified she injured her left knee as a result of this fall and that she was unable to bear weight on her left knee as she was assisted to her car by a co-worker. She testified, "They lifted me up and put me in the car." Claimant also testified a co-worker had to drive her to her house, and that her husband then drove her to the emergency room where she was provided with a "brace or a splint" and crutches.

¶4 Claimant was subsequently examined by Dr. Christopher Jordan on January 15, 2019. Claimant responded in the affirmative when questioned about: whether Dr. Jordan "thought [she] had suffered valgus stress with external rotation of the knee"; whether he placed Claimant "in a knee immobilizer in the ER and . . . diagnosed a Grade 3 sprain of the MCL and possible or probable medial meniscus tear and recommended an MRI"; whether he read the MRI as "documenting a bone contusion of the lateral femoral condyle and fluid around the ACL insertion"; and whether he recommended physical therapy.

¶5 Claimant testified she subsequently went to "[q]uite a few" physical therapy appointments and did not miss any of these appointments. She testified the physical therapy was "[a]t times . . . okay but for the most part" did not improve her condition.

¶6 Claimant testified in the affirmative when questioned whether, approximately six months after the accident, she was again examined by Dr. Jordan, who "was puzzled why [she was] still . . . complaining of the same pain and swelling and so forth[.]" She testified Dr. Jordan recommended a second MRI which he read as normal, thus leading to Dr. Jordan, in a report dated September 30, 2019, opining: "At this point, I think we could declare the patient maximum medical improvement."

¶7 Claimant testified that at the time of the hearing she was still experiencing swelling in her left knee and she testified: "I feel like my knee is being torn into pieces." Claimant responded in the affirmative when questioned whether she "want[ed] to get the opinion of another physician[.]"

¶8 The ALJ's order filed in July 2020 specified that Claimant, in addition to requesting a finding of a compensable injury to the left knee, "requests additional medical treatment to the left knee. Claimant has filed a CC Form A to request a change of treating physician. Claimant requests [Employer] identify potential physicians for a CC Form A Order." The ALJ rejected Employer's assertion that Claimant fell in an area that was "not owned[,] maintained [and] operated by [Employer]." Instead, the ALJ found that "the sidewalk where [Claimant] fell was [Employer's] premises."

¶9 The ALJ found Claimant "was a credible witness," and noted Claimant's descriptions of her left knee pain as well as her denial of any prior injuries to her left knee. The ALJ's order further states:

Claimant . . . came under the care of Dr. Christopher Jordan, an orthopedic specialist, who initially evaluated claimant's left knee on January 15, 2019. Dr. Jordan diagnosed claimant with a grade 3 sprain of the medial collateral ligament, probable medial meniscus tear, and possible MCL tear of the left knee. An MRI was performed January 16, 2019. According to the radiologist's report, the MRI revealed a bone bruise of the lateral femoral condyle and a grade 2 chondral fissure involving the median ridge of the dorsal patella. After reviewing the MRI, Dr. Jordan diagnosed claimant with a bone contusion in the lateral femoral condyle and fluid around the ACL insertion on the tibia and MCL origin off of the femur in his January 24, 2019 report. Dr. Jordan recommended physical therapy. Dr. Jordan re-evaluated claimant on February 14, 2019, at which time he diagnosed claimant with a grade 1 or 2 sprain of the medial collateral ligament and a lateral femoral condylar contusion. He recommended additional physical therapy. . . .

. . . .

With regard to claimant's alleged knee injury, Dr. Jordan diagnosed claimant with a bone contusion in the lateral femoral condyle and fluid around the ACL insertion on the tibia and MCL origin off of the femur in his January 24, 2019 report. Dr. Jordan then diagnosed claimant with a grade 1 to 2 sprain of the medial collateral ligament and lateral femoral condylar contusion in his February 14, 2019 report. No evidence was submitted to indicate these conditions pre-dated claimant's January 3, 2019 incident. In fact, claimant denied prior injuries to the left knee. . . .

¶10 Although Employer requested at the hearing that the ALJ provide "a specific finding of what the injury is," the ALJ stated in its order that "[t]he questions presented at trial were whether claimant was acting in the course and scope of her employment at the time of the fall, and whether claimant suffered any injury to her left knee in the fall." The ALJ concluded that, "[b]ased upon Dr. Jordan's reports, claimant sustained an injury to the left knee." The ALJ also found Claimant "is entitled to a change of physician via Form A Order." Thus, the ALJ's order determined:

1. Claimant sustained a compensable injury to the LEFT KNEE as a result of a single incident accident occurring in the course and scope of employment with [Employer] with a date of injury of January 3, 2019.

2. In response to claimant's application for change of physician, [Employer] shall designate three (3) physicians qualified to treat claimant's injured LEFT KNEE on a CC Form 10A within twenty (20) days of the date of this order.

¶11 Employer appealed the ALJ's order to the Commission. Employer asserted before the Commission, among other arguments, that because Claimant's injury is not stated in the ALJ's order "with any clarity," that Employer "is basically being deprived of its due process and substantive right to make any defenses or to apply the AWCA in any way, shape or form."

¶12 In its order filed in July 2021, the Commission affirmed the order of the ALJ. From the Commission's order, Employer appeals.

STANDARD OF REVIEW

¶13 "The law in effect at the time of the injury controls both the award of benefits and the appellate standard of review." Mullendore v. Mercy Hosp. Ardmore, 2019 OK 11438 P.3d 35885A O.S. Supp. 2014 § 78

The Supreme Court may modify, reverse, remand for rehearing, or set aside the judgment or award only if it was:

1. In violation of constitutional provisions;
2. In excess of the statutory authority or jurisdiction of the Commission;
3. Made on unlawful procedure;
4. Affected by other error of law;
5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;
6. Arbitrary or capricious;
7. Procured by fraud; or
8. Missing findings of fact on issues essential to the decision.

The issue raised on appeal by Employer regarding the lack of a more precise finding regarding the injury sustained by Claimant raises the issue of the applicability of § 78(C)(8) ("Missing findings of fact on issues essential to the decision"). Employer also asserts the lack of such a finding has deprived Employer "of its due process rights to adequately defend the case," thus raising the issue of the applicability of § 78(C)(1) ("In violation of constitutional provisions"). The issues raised by Employer present issues of law only, and issues of law are reviewed de novo. "Under this standard on appeal, we assume plenary, independent, and non-deferential authority to reexamine the lower tribunal's legal rulings." Mullendore, ¶ 12 (citations omitted). See also Gillispie v. Estes Exp. Lines, Inc., 2015 OK CIV APP 93361 P.3d 543de novo." (citations omitted)).

ANALYSIS

I. Specificity of Compensability Finding

¶14 Employer asserts:

The issue in this case is whether the AWCA requires a specific finding and adjudication of the injury sustained by a claimant in workers' compensation cases. If so, the [Commission] failed to properly specify the compensable injury and the [Commission's order] is therefore missing a finding of fact critical to the decision.

¶15 The AWCA requires specific findings of the ultimate facts responsive to the issues shaped by the evidence. The AWCA provides that "[a]dministrative law judges are required to make specific, on-the-record findings of ultimate facts responsive to the issues shaped by the evidence as well as conclusions of law on which its judgment is to be rested." 85A O.S. Supp. 2014 § 72See Gillispie, ¶ 17 (Compared to the Oklahoma Administrative Procedures Act, 75 O.S. §§ 250-323, which "appear[s] to restrict an appellate court from disturbing an agency decision lacking essential findings of fact . . . [if the complaining] party did not request them," "[s]uch a restriction is not present in the similar AWCA provision, nor would such a restriction be consistent with state workers' compensation law and practice" -- "[t]here is no requirement [under the AWCA] that a party request factual findings beforehand.").

¶16 Moreover, the statutory requirement set forth in § 72(A)(4) "is consistent with existing Oklahoma Supreme Court precedent[.]" Gillispie, ¶ 17. As noted by the Gillispie Court, the Oklahoma Supreme Court, in Dunkin v. Instaff Personnel, 2007 OK 51164 P.3d 1057

As early as 1945, this Court embraced the rule that "[i]t is the duty of the State Industrial Commission . . . to make specific findings of the ultimate facts responsive to the issues as well as the conclusions of law upon which an order is made granting or denying an award of compensation to a claimant." This Court also set out the consequence for ignoring the rule. "Where the findings of fact and conclusions of law . . . are too indefinite and uncertain for judicial interpretation, this court, on appeal, will vacate the order for further proceedings." This rule appears in numerous decisions spanning the decades since that time.

Id. ¶ 14 (emphasis added) (citations omitted). As also noted by the Gillispie Court, the Oklahoma Supreme Court has similarly explained as follows:

Findings of an administrative agency acting in a quasi-judicial capacity should contain a recitation of basic or underlying facts drawn from the evidence sufficiently stated to enable the reviewing court to intelligently review the decision and ascertain if the facts upon which the order is based create a reasonable basis for the order. The protection afforded by findings assures that justice is administered according to facts and law . . . .

Jackson v. Indep. Sch. Dist. No. 16 of Payne Cnty., 1982 OK 74648 P.2d 26

¶17 It is apparent that the Supreme Court's language in Dunkin (that the court must "make specific findings of the ultimate facts responsive to the issues as well as the conclusions of law upon which an order is made") is mirrored in § 72(A)(4) of the AWCA (that the ALJ must "make specific, on-the-record findings of ultimate facts responsive to the issues shaped by the evidence as well as conclusions of law on which its judgment is to be rested"). Thus, we presume the Legislature intended to codify a continuation of this "longstanding requirement." Dunkin, ¶ 13 (citation omitted). See, e.g., Special Indem. Fund v. Bedford, 1993 OK 60852 P.2d 150

¶18 Thus, the issue of whether the ALJ's finding that Claimant sustained a compensable injury to her left knee is sufficiently "specific" and "responsive to the issues shaped by the evidence," § 72(A)(4), can also be stated as asking whether the finding is "sufficiently stated to enable [this Court] to intelligently review the decision and ascertain if the facts upon which the order is based create a reasonable basis for the order," Jackson, ¶ 13. Only if the ALJ's finding that Claimant sustained a compensable injury to her left knee is "too indefinite and uncertain for judicial interpretation," Dunkin, ¶ 14, is it subject to vacation under § 78(C)(8) on the basis of "[m]issing [a] finding[] of fact on [an] issue[] essential to the decision."

¶19 The ALJ's finding of a left knee injury is not too indefinite or uncertain for judicial interpretation. As even Employer acknowledges on appeal, "According to the only objective medical evidence submitted by either party and the diagnosis of Claimant's treating physician, the only injury Claimant could have [been] found to have sustained was a lateral femoral condylar contusion (bruise) and a grade 1 or 2 sprain of the MCL." If there is only one injury that Claimant could have been found to have sustained, then the ALJ's finding that "Claimant sustained a compensable injury to the LEFT KNEE as a result of a single incident accident occurring in the course and scope of employment" is not in need of further specification to enable this Court to intelligently review the decision.

¶20 Moreover, although Employer requested a more specific finding, such a request, as explained above, does not affect the duty of the ALJ under § 72(A)(4). Section 72(A)(4) does not require the ALJ to set forth descriptions in its findings beyond what is essential to its decision; rather, the specificity required depends upon the issues shaped by the evidence.

¶21 Employer nevertheless argues that, in proceedings before the Commission, a "generalized finding of what body part is injured" -- such as the ALJ's finding that Claimant sustained an injury to her left knee -- "goes against the heart of § 2 [of the AWCA.]"85A O.S. Supp. 2018 § 2established by medical evidence supported by objective findings," § 2(9)(d) (emphasis added), and "[m]edical opinions addressing compensability . . . shall be stated within a reasonable degree of medical certainty," § 2(31)(b), there is no requirement that the ALJ, in finding a compensable injury to a "physical structure of the body," must employ language or medical terms beyond what is essential to the decision. See also 85A O.S. Supp. 2014 § 22determine claims for compensation and to conduct hearings and investigations and to make such judgments, decisions, and determinations as may be required by any rule or judgment of the Commission." (emphasis added)).

¶22 Indeed, an ALJ's compensability finding is not equivalent to medical evidence or a medical opinion, though it must be supported by such evidence. For example, in Mullendore v. Mercy Hosptial Ardmore, 2019 OK 11438 P.3d 358Id. ¶ 4. Subsequently, an "MRI study of the right knee was conducted with a conclusion that [the claimant] had a 'linear tear of the hyaline articular cartilage of the medial patellar facet which measures 0.4 cm.'" Id. ¶ 3. Although the MRI study referred to the injury with a high degree of specificity, the Oklahoma Supreme Court, and the ALJ in its findings, both referred to the injury as an injury to the claimant's right knee. See also Maxwell v. Sprint PCS, 2016 OK 41369 P.3d 1079structure as "a complex entity" "made up of a number of parts,"Mullendore, unless such a degree of specificity is essential to the decision.

¶23 Here, although portions of the record refer to Claimant's left knee injury using similarly precise language, the ALJ properly stated in its order that "[t]he questions presented at trial were whether claimant was acting in the course and scope of her employment at the time of the fall, and whether claimant suffered any injury to her left knee in the fall." (Emphasis added.) Of course, the medical reports in the record often simply refer to the injury in question as the injury to Claimant's left knee or to Claimant's "left knee problems." Regardless, we agree with the ALJ that the issue presented was whether Claimant proved she suffered a compensable injury to her left knee, and the ALJ addressed this issue with adequate specificity. See 85A O.S. Supp. 2018 § 2

¶24 It should be observed that the ALJ's order is full of specifications detailing the medical and causal support for its finding that an injury occurred to Claimant's left knee as a result of her employment.

[w]ith regard to claimant's alleged knee injury, Dr. Jordan diagnosed claimant with a bone contusion in the lateral femoral condyle and fluid around the ACL insertion on the tibia and MCL origin off of the femur in his January 24, 2019 report. Dr. Jordan then diagnosed claimant with a grade 1 to 2 sprain of the medial collateral ligament and lateral femoral condylar contusion in his February 14, 2019 report. No evidence was submitted to indicate these conditions pre-dated claimant's January 3, 2019 incident. In fact, claimant [who "was a credible witness"] denied prior injuries to the left knee. . . .

Employer not only failed to challenge the medical or causal basis of Claimant's compensability claim,Dunkin, ¶ 13 (citation omitted).

II. Substantive Due Process

¶25 Employer next argues as follows:

If this Court does not require a specific finding of injury to be determined in Workers' Compensation cases, then Employer will be deprived of its substantive due process right to defend or argue that medical treatment is not in connection to the "injury" received by its employee. Employer cannot accurately apply [85A O.S. Supp. 2014] § 50

Employer cites no legal authority in support of this argument other than § 50(A) and, implicitly, the Due Process Clause.

¶26 In response, Claimant points out that although § 50(A) provides that "[t]he employer shall promptly provide an injured employee with" reasonably necessary medical services in the form of "medical, surgical, hospital, optometric, podiatric, and nursing services, along [with any] medicine, crutches, ambulatory devices, artificial limbs, eyeglasses, contact lenses, hearing aids, and other apparatus," § 50(A) further provides that "[t]he employer shall have the right to choose the treating physician." Claimant appears to assert that although Employer may determine the treating physician, it is not the role of the Employer to "determine what treatment is reasonably necessary[.]" Claimant asserts, instead, that it is "the province of the court/commission and the legislature to determine what treatment is reasonably necessary[.]" Claimant cites to certain regulations adopted by the Commission. In particular, Claimant cites to Oklahoma Administrative Code (OAC) § 810:15-7-1 (2015), which provides as follows:

(a) Health care not subject to a certified workplace medical plan shall be provided using the ODG [i.e., Official Disability Guidelines] in effect at the time of treatment as the primary standard of reference for determining the frequency and extent of services presumed to be medically necessary and appropriate for compensable injuries under the AWCA, and in resolving such matters in the event a dispute arises; provided, per 85A O.S., § 16

(b) Health care provided by a certified workplace medical plan shall be in accordance with the plan's treatment guidelines. Pursuant to 85A O.S., § 64

(c) Oklahoma Treatment Guidelines (OTG) adopted by the Physician Advisory Committee pursuant to 85 O.S., § 37385 O.S., § 37385A O.S., § 17

(1) medical treatment not addressed by the latest edition of the ODG; and
(2) the prescription and dispensing of any controlled substance included in Schedule II of the Uniform Controlled Dangerous Substances Act if not addressed by the latest edition of the ODG.
(d) Information on how to access the ODG or any PACG may be found on the Commission's website, http://www.wcc.ok.gov.

Claimant also describes Employer's argument as disingenuous given Employer's right to choose the treating physician.

¶27 To a certain extent, Claimant overlooks the fact that Employer is attempting to raise a substantive due process argument.

Substantive due process review is the judicial determination of the compatibility of the substance of a law or governmental action with the Constitution. The Court is concerned with the constitutionality of the underlying rule rather than with the fairness of the process [procedural due process] by which the government applies the rule to an Individual.

Gladstone v. Bartlesville Indep. Sch. Dist. No. 30 (I-30), 2003 OK 3066 P.3d 442See also id. ¶ 23 ("We cannot be concerned with arguments addressing themselves to desirability, wisdom or logic of legislation unless it offends the constitution." (footnote omitted)). "Substantive due process encompasses a general requirement that all government actions have a fair and reasonable impact on the life, liberty, or property of the person affected, and arbitrary action is therefore proscribed." Baby F. v. Okla. Cnty. Dist. Ct., 2015 OK 24348 P.3d 1080Braitsch v. City of Tulsa, 2018 OK 100436 P.3d 14

¶28 In an effort to demonstrate a substantive due process violation, Employer asserts that a lack of a more specific finding regarding the nature and extent of the injury, either in the present case or, presumably, in any case before the Commission involving a compensable injury, prevents Employer from "be[ing] able to assert a valid § 50(A) defense to . . . recommended medical treatment." One problem with Employer's argument is that, as discussed in the preceding section, "[a]dministrative law judges are required to make specific, on-the-record findings of ultimate facts responsive to the issues shaped by the evidence as well as conclusions of law on which its judgment is to be rested." 85A O.S. Supp. 2014 § 72

¶29 Employer hypothesizes: "What if during the course of Employer's current appeal, Claimant sustains another injury to her left knee (unbeknownst to Employer) and it is determined that Claimant needs surgery to correct a torn meniscus?" However, the present case does not involve a separate, non-work-related injury to Claimant's left knee that might lead to confusion regarding what treatment is reasonably necessary in connection with the work-related injury. Moreover, even if Claimant were to sustain "another injury to her left knee," § 50 appears to contain mechanisms intended to resolve such difficulties. For example, § 50(E) provides:

An employee claiming or entitled to benefits under this act, shall, if ordered by the Commission or requested by the employer or insurance carrier, submit himself or herself for medical examination. If an employee refuses to submit himself or herself to examination, his or her right to prosecute any proceeding under this act shall be suspended, and no compensation shall be payable for the period of such refusal.

More importantly, if any dispute becomes more than merely abstract and hypothetical, the AWCA provides that a hearing can be requested "on any issue." See 85A O.S. Supp. 2014 § 111

¶30 The longstanding requirement discussed in the preceding section of the Analysis and codified in § 72(A)(4) of the AWCA allows administrative law judges to enter findings that are responsive to the issues shaped by the evidence without requiring findings more specific than are essential to the decision and to review by the appellate court. While it is possible that a different rule would have certain advantages to one or both parties, we are unpersuaded that the AWCA contains arbitrary and unreasonable provisions in this regard. Consequently, we reject Employer's substantive due process argument.

CONCLUSION

¶31 Pertinent to the issue raised on appeal, the role assigned to the ALJ was that of determining whether Claimant had sustained "damage or harm to the physical structure of the body . . . ." 85A O.S. § 2

¶32 SUSTAINED.

FISCHER, C.J., and HIXON, J., concur.

FOOTNOTES

85A O.S. Supp. 2014 § 3See also 85A O.S. Supp. 2019 § 3

Gillispie is equally true of the present case: "In its order affirming the ALJ's decision, the Commission made no findings beyond those contained in the ALJ's order. We therefore review the ALJ decision as the order of the Commission." 2015 OK CIV APP 93

[t]he "damage" or "harm" must be defined in order to apply the remaining sections of the AWCA, including whether or not an accident was the major cause of the injury, whether the injury is a soft-tissue injury, if the injury is excluded or what medical treatment is connected to that particular injury and how permanent partial disability is determined.

See The American Heritage Dictionary of the English Language 1718 (4th ed., Houghton Mifflin Company 2000) ("structure": "1. Something made up of a number of parts that are held or put together in a particular way"; "3. The interrelation or arrangement of parts in a complex entity[.]").

[U]nless an injury is defined or determined to be a strain resulting from the natural aging process, osteoarthritis, arthritis, degenerative joint disease, degenerative spondylosis/spondylolisthesis or spinal stenosis, the Commission cannot determine whether the injury is one of the excluded conditions or not. Without a determination of the "injury," 85A O.S. § 2

Employer further asserts:

The AWCA is replete with the definition of specific injuries (i.e. hernias, occupational disease, mental injury/illness, heart attacks), and must also be provided in the instant case. Failure to do so deprives Employer of the right to challenge or apply applicable statutes involving medical care, limitations on temporary total disability benefits, permanent disability ratings, subsequent injury or any other compensation or benefit due under the AWCA.

Employer has not asserted that the injury was the result of the natural aging process, or that the injury falls under some other excluded condition. It is also clear from the record that Claimant did not sustain (and neither Claimant nor Employer asserted that Claimant sustained) a hernia, occupational disease, mental injury/illness, heart attack, etc. Section 72(A)(4) requires only that the ALJ set forth findings that are "responsive to the issues shaped by the evidence," not hypothetical issues.

Mullendore did not set forth in its findings that the claimant's injury was, for example, a "linear tear of the hyaline articular cartilage of the medial patellar facet which measures 0.4 cm," the ALJ in the present case properly refrained from setting forth any more than a determination of whether Claimant successfully proved she suffered a compensable injury to the physical structure of the body at issue.

State ex rel. Bd. of Regents of Univ. of Okla. v. Lucas, 2013 OK 14297 P.3d 378