2015 OK CIV APP 93

**O'Neal R. GILLISPIE, Petitioner,**

v.

**ESTES EXPRESS LINES, INC., New Hampshire Insurance Co., and the Workers' Compensation Commission, Respondents.**

**No. 113,508.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 1, 2015.

---

Joey Chiaf, Chiaf Law Offices, P.C., Oklahoma City, Oklahoma, for Petitioner.

Nick Crews, Travis A. Fulkerson, Fellers, Snider, Blankenship, Bailey & Tippens, Tulsa, Oklahoma, for Respondents.

P. THOMAS THORNBRUGH, JUDGE.

¶1 Claimant, O'Neal R. Gillispie, seeks review of an order by the Oklahoma Workers' Compensation Commission sitting en banc (Commission) affirming a decision by an administrative law judge (ALJ) that denied Claimant benefits for injury to his neck. For the reasons set forth below, we reverse the Commission's order and remand for further proceedings, to include the appointment of a treating physician for Claimant's neck pursuant to the provisions of the Administrative Workers' Compensation Act.

## BACKGROUND

¶ 2 Claimant is a truck driver for Estes Express Lines, Inc. (Employer). On March 14, 2014, he filed a CC–Form–3 claiming injury to his back, neck, right shoulder, and head on March 3, 2014, when he slipped and fell as he descended an icy ramp at work, on the way to hook up his tractor trailer. Employer admitted injury to the right shoulder and back, and began providing medical treatment to those body parts. It denied the neck injury was attributable to Claimant's employment, and has not provided treatment for it.[1]

¶ 3 Employer asserted as a defense that Claimant has a pre-existing neck condition as a result of a 2010 work injury for another employer. It argued the pre-existing condition removed Claimant's neck condition "outside the scope of a compensable injury" under § 2(9) of the Administrative Workers' Compensation Act, 85A O.S. Supp.2014 §§ 1 through 125 (AWCA), because it was not "solely caused" by the March 3, 2014 fall.[2] Employer also argued Claimant was not asserting a new injury but was actually claiming aggravation of his pre-existing neck condition, and that Employer was entitled to apportionment.

¶ 4 An ALJ heard the matter on July 7, 2014. Claimant testified that he had injured his neck in 2010 while working for another employer, but fully recovered and had experienced no further problems with his neck until after his recent fall. He submitted supporting medical evidence, including a report from his medical expert, Dr. Blough, who made the following observations:

> Physical examination of the cervical spine reveals tenderness to palpation in the bilateral paraspinal musculature. Cervical range of motion is restricted in all planes. Cervical pain radiates into the right upper extremity with numbness and tingling. Weakness against resistance is demonstrated in the cervical flexors and extensors. Weakness is also demonstrated in the shoulders, elbows and wrists against resisted flexion and extension. Jamar dynamometer testing reveals 38 pounds of force produced with the right hand and 49 pounds of force produced with the left hand. Decreased sensation to monofilament testing is noted in the upper extremities.

¶ 5 Dr. Blough found that Claimant had sustained "acute traumatic injury to [his] cervical spine" with "anatomical abnormalities consistent with multiple disc bulges" attributable to the March 2014 accident, and recommended that Claimant undergo diagnostic testing, including an MRI and evaluation of his neck by the same spine specialist who is currently treating Claimant's low back, Dr. Robert Remondino. Employer submitted a medical report from its expert, Dr. LeRoy Young, who obtained and reviewed x-rays of Claimant's cervical spine that showed "moderate to severe disc space narrowing at C5–6 and C6–7," and "[h]ypertrophic degenerative changes." Dr. Young opined that "the major cause of [Claimant's] current complaints to his cervical spine and headaches is not the accident of March 3, 2014," and that Claimant had sustained "no permanent partial impairment to the body as a whole for injuries to the head or cervical spine as a result of the above stated accident...." Dr. Young did not address whether Claimant's neck needed further treatment, nor did he opine

---

1. The record indicates that Claimant filed an application for a change of treating physician for his back, shoulder, and neck, pursuant to 85A O.S. Supp.2014 § 56(B), on March 25, 2014. Employer responded with proposed physicians as to Claimant's back and shoulder, but did not file a similar response as to his neck.

2. See Transcript of Proceedings held July 7, 2014, at p. 13. The transcript apparently is based on a digital audio recording of the hearing, as the ALJ denied both parties' requests for a stenographic reporter pursuant to the Commission's then-existing Emergency Administrative Rule 810–5–48(d), which permitted audio recordings in lieu of a stenographer. The Supreme Court later prohibited the practice of recording hearings to the extent that the Emergency Rule conflicted with the requirements of 85A O.S. Supp.2013 § 72(B)(1)(a). *Williams v. Workers' Compensation Comm'n*, 2014 OK 98, 339 P.3d 427. The rule was subsequently amended and currently provides that all hearings before the Commission or an ALJ must be stenographically recorded by a Commission reporter, with transcripts provided at the request and expense of the party ordering same. Neither party raises this issue on appeal.

further as to the cause of Claimant's neck condition.

¶ 6 The ALJ denied Claimant's request for treatment, finding he had failed to prove by a "preponderance of the evidence" that he suffered a "compensable injury," as defined in AWCA § 2(9), to his neck. Claimant appealed to the Commission en banc, which heard oral arguments by the parties in November 2014. On motion but without discussion, the Commissioners voted unanimously in open session to affirm based on findings that the ALJ's order was neither against the clear weight of the evidence nor contrary to law, and issued an order accordingly. Claimant seeks review here.

### STANDARD OF REVIEW

¶ 7 This Court "may modify, reverse, remand for rehearing, or set aside" a judgment, decision, or award of the Commission only if it was:

1. In violation of constitutional provisions;
2. In excess of the statutory authority or jurisdiction of the Commission;
3. Made on unlawful procedure;
4. Affected by other error of law;
5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;
6. Arbitrary or capricious;
7. Procured by fraud; or
8. Missing findings of fact on issues essential to the decision.

85A O.S. Supp.2014 § 78(C).

¶ 8 The parties agree that the above-quoted statute is the appellate court standard of review that was in effect when Claimant's injury occurred in March 2014, and that the standard applies here. They also agree that

Claimant has asserted subsections (C)(5)(that the Commission's decision was clearly erroneous) and (C)(8)(that the decision fails to make findings on essential issues) in support of reversal.

¶ 9 The parties differ, however, as to how review under (C)(5) should be applied to the Commission's factual determination that Claimant did not sustain a compensable injury to his neck and was not entitled to medical treatment.[3] Employer argues the Legislature intended to invoke the deferential "any competent evidence" standard set out in *Parks v. Norman Municipal Hospital,* 1984 OK 53, 684 P.2d 548, and applicable to injuries occurring prior to November 1, 2010. Claimant argues that the proper interpretation of subsection (C)(5) requires this Court to reverse or modify a Commission order not supported by the "clear weight of the evidence," and cites the Supreme Court's decision in *Peoplelink, LLC v. Bear,* 2014 OK 65, —— P.3d ——, in support of his argument that the Commission's decision was clearly erroneous. Significantly, neither party's argument recognizes the Commission's status as an administrative agency.

¶ 10 As specified in the AWCA, the Commission is an executive agency of the State of Oklahoma, 85A O.S. Supp.2014 § 19(A), and is subject to the Oklahoma Administrative Procedures Act (OAPA), 75 O.S.2011 and Supp. 2014 § 250 *et seq.,* with regard to rulemaking. *See* 85A O.S. Supp.2014 § 19(C). As to "appeals and disputes arising from Commission actions," the AWCA, rather than the OAPA, applies.[4] 85A O.S. Supp. 2014 § 19(F). Even so, the review criteria set forth in AWCA § 78(C) are virtually identical to those set forth in the OAPA at 75 O.S.2011 § 322(1)[5] with three notable excep-

---

**3.** Whether an injury arose out of and in the course of a worker's employment is a question of fact. *Corbett v. Express Personnel,* 1997 OK 40, ¶ 11, 936 P.2d 932. Likewise, "[t]he question of whether medical treatment is necessary for an injured worker is a question of fact for determination by the trial tribunal." *Iwunoh v. Maremont Corp.,* 1984 OK 8, ¶ 6, 692 P.2d 548; *see also Richey v. Commander Mills, Inc.,* 1974 OK 47, 521 P.2d 805.

**4.** As to such appeals or disputes, "the Commission shall be governed by [the] provisions of this

act and the Commission shall not be subject to the provisions of the [OAPA], except as provided in this act." 85A O.S. Supp.2014 § 19(F).

**5.** Title 75 O.S.2011 § 322(1) provides that an appellate court may set aside, modify, reverse or remand an agency order if the court "determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

  (a) in violation of constitutional provisions; or

tions, one of which is found in AWCA § 78(C)(5).[6]

*Review Pursuant to AWCA § 78(C)(5)*

¶ 11 The OAPA equivalent to AWCA § 78(C)(5) is OAPA § 322(1)(e), which provides that an appellate court may reverse an agency decision if the decision is:

(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, *as defined in [75 O.S. 2011 § 310], including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question [sic] of fact*.... (Emphasis added).

The language italicized above (1) incorporates OAPA § 310, which directs agencies in how to treat certain types of evidence and evidentiary privileges in agency proceedings generally; and (2) prohibits a court from substituting its judgment for the agency's as to the weight of the evidence on fact issues. Similar language was not included by the Legislature in AWCA § 78(C)(5).

¶ 12 Why the Legislature would not have incorporated a reference similar to OAPA § 310 in the AWCA is likely because such a reference would be of little practical use in workers' compensation proceedings. Workers' compensation practice has its own unique set of procedural and evidentiary rules, particularly with regard to medical evidence and the release of medical information (including physician testimony). Attempting to incorporate a reference similar to OAPA § 310 into the workers' compensation appellate review standard would be impractical. Moreover, the Legislature made

clear in AWCA § 72(A)(1) that the Commission and ALJs are not "bound by technical or statutory rules of evidence or formal rules of procedure" unless required by the AWCA itself.

¶ 13 Less obvious is the reason why the Legislature did not include a direction to appellate courts similar to the one made in OAPA § 322(1)(e), that a reviewing court should not substitute its judgment for an agency decision "as to the weight of the evidence." We do not, however, consider the lack of such specific prohibitory language in AWCA § 78(C)(5) as evidencing legislative intent for this Court to reweigh the evidence or to substitute our judgment for that of the Commission's fact finding. Had the Legislature intended for this Court to conduct a "reweighing of the evidence" identical to that conducted by the Commission, it could certainly have said so, as it did, for example, in 85 O.S. Supp.2010 § 3.6(C), or 85 O.S.2011 § 340(D). It did not.

¶ 14 We find it likely that the Legislature found no need to include cautionary language in the AWCA because the Legislature is fully aware of, and undoubtedly familiar with, the opinions of the Supreme Court and of this Court applying the standard of review for administrative agency decisions generally, and that it intended to invoke applicable settled law when it enacted AWCA § 78(C). *Cf., Peoplelink, LLC. v. Bear*, 2014 OK 65, ¶ 6, —— P.3d —— (finding Legislature was familiar with court decisions using equity standard of review, and must have intended that standard by including identical language in amendment to 85 O.S. Supp.2010 § 3.6); and *Marshall County, Okla. v. Homesales, Inc.*, 2014 OK 88, ¶ 6, 339 P.3d 878 (Legislature invoked settled law when it changed

---

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or

(f) arbitrary or capricious; or

(g) because findings of fact, upon issues essential to the decision were not made although requested."

6. A second exception is at 85A O.S. Supp.2014 § 78(C)(8), which also is at issue in this appeal and discussed in the text. The third exception, at 85A O.S. Supp.2014 § 78(C)(7), provides for setting aside or reversing awards "[p]rocured by fraud," and is not at issue here. A similar provision is not found in OAPA § 322(1), however.

standard of review for class certification). We therefore consider authoritative here Oklahoma appellate court decisions applying the OAPA standard when reviewing administrative agency determinations.

¶ 15 Pursuant to that standard,

The appellate courts will review the entire record made before an administrative agency acting in its adjudicatory capacity to determine whether the findings and conclusions set forth in the agency order are supported by substantial evidence. An adjudicatory order will be affirmed on appeal if the record contains substantial evidence in support of the facts upon which the decision is based and the order is otherwise free of error.

*Dugger v. State ex rel. Okla. Tax Comm'n*, 1992 OK 105, ¶ 9, 834 P.2d 964 (footnotes omitted); *see also Okla. Dept. of Public Safety v. McCrady*, 2007 OK 39, ¶ 10, 176 P.3d 1194. "On fact questions, 'we [look] at the entire record to determine whether the result was supported by substantial evidence'" that is competent. *Martinez v. State ex rel. Okla. State Bd. of Med. Licensure and Supervision*, 1993 OK CIV APP 68, ¶ 4, 852 P.2d 173. At the same time, however, "the issues in an administrative proceeding are ordinarily limited to those raised by the pleadings," *Bd. of Examiners of Vet. Med. v. Mohr*, 1971 OK 64, ¶ 26, 485 P.2d 235, and, "[e]xcept in certain cases of alleged irregularities in procedure before the agency … the review is confined to the record made before the administrative tribunal," *City of Tulsa v. State ex rel. Pub. Empl. Rel. Bd.*, 1998 OK 92, ¶ 12, 967 P.2d 1214. Thus, this Court will review to determine from the record if there is substantial evidence to support the decision. This is the standard we apply here.

*Review Pursuant to § 78(C)(8)*

¶ 16 Claimant also asserts AWCA § 78(C)(8), which also contains slightly different language than its OAPA counterpart. AWCA § 78(C)(8) provides for appellate court reversal of a Commission decision·if the decision is "[m]issing findings of fact on issues essential to the decision." The OAPA equivalent, OAPA § 322(1)(g), provides for an appellate court to reverse or modify an agency decision "because findings of fact, upon issues essential to the decision were not made although requested."

¶ 17 The OAPA subsection's language would appear to restrict an appellate court from disturbing an agency decision lacking essential findings of fact simply because a party did not request them. Such a restriction is not present in the similar AWCA provision, nor would such a restriction be consistent with state workers' compensation law and practice. AWCA § 72(A)(4) imposes the requirement that ALJs "make specific, on-the-record findings of ultimate facts responsive to the issues shaped by the evidence as well as conclusions of law on which its judgment is to be rested." There is no requirement that a party request factual findings beforehand. The statutory requirement of such findings is consistent with existing Oklahoma Supreme Court precedent, as explained by the Court in *Dunkin v. Instaff Personnel:*

As early as 1945, this Court embraced the rule that "[i]t is the duty of the State Industrial Commission [now the Workers' Compensation Court] to make specific findings of the ultimate facts responsive to the issues as well as the conclusions of law upon which an order is made granting or denying an award of compensation to a claimant." *Corzine v. Compress*, 1945 OK 345, ¶ 0, Syl. 1, 196 Okla. 259, 164 P.2d 625, Syl. 1. This Court also set out the consequence for ignoring the rule. "Where the findings of fact and conclusions of law … are too indefinite and uncertain for judicial interpretation, this court, on appeal, will vacate the order for further proceedings." *Id.* at Syl. 2. This rule appears in numerous decisions spanning the decades since that time.

2007 OK 51, ¶ 14, 164 P.3d 1057 (footnote omitted). *See also Mohr*, 1971 OK 64 at ¶ 13, 485 P.2d 235 (quoting *State ex rel. Okla. State Bd. of Embalmers v. Guardian Funeral Home*, 1967 OK 141, ¶ 24, 429 P.2d 732); and *Jackson v. Indep. School Dist. No. 16 of Payne Cty.*, 1982 OK 74, ¶ 13, 648 P.2d 26, where the Court stated:

It is fundamental that an absence of required findings is fatal to the validity of administrative decisions even if the record discloses evidence to support proper findings. Findings of an administrative agency acting in a quasi-judicial capacity should contain a recitation of basic or underlying facts drawn from the evidence sufficiently stated to enable the reviewing court to intelligently review the decision and ascertain if the facts upon which the order is based create a reasonable basis for the order. The protection afforded by findings assures that justice is administered according to facts and law, and not through Star Chamber techniques. The crux of the matter is that democracy implies respect for the elementary rights of the person, however suspect or undeserving; a democratic government must practice fairness-and fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. (Footnotes omitted).

¶ 18 We further note that, though not raised by the parties here, the issue of whether findings essential to a decision are in fact missing from an agency order presents a question of law. This Court reviews issues of law *de novo*. *See State ex rel. Protective Health Services State Dept. of Health v. Vaughn,* 2009 OK 61, ¶ 9, 222 P.3d 1058; *Am. Airlines v. Hervey,* 2001 OK 74, ¶ 11, 33 P.3d 47.

## ANALYSIS

¶ 19 In its order affirming the ALJ's decision, the Commission made no findings beyond those contained in the ALJ's order. We therefore review the ALJ decision as the order of the Commission.

¶ 20 The ALJ decision found as follows as to Claimant's request for medical treatment to his neck:

6. The Claimant has failed to prove by a preponderance of the evidence that he suffered a compensable injury to his NECK on March 3, 2014. Since the Claimant has failed to prove compensability of injury to the NECK, any issue of entitlement to workers' compensation benefits based on injury to the NECK is rendered moot.

¶ 21 In the "Discussion" portion of the order, the ALJ notes that "compensable injury" is defined at AWCA § 2(9) as "damage or harm to the physical structure of the body . . . caused solely as the result of" an accident arising out of the course and scope of employment, and that a compensable injury must be established by "medical evidence supported by objective findings" as defined in AWCA § 2(31). The order also notes that "objective findings" are "those findings which cannot come under the voluntary control of the patient." The order then states:

After reviewing the evidence in this case . . . I find that the Claimant has failed to meet his burden of proving by a preponderance of the evidence that he suffered a compensable injury to the NECK. *Specifically, I find that the Claimant has failed to offer medical evidence supported by objective findings establishing a compensable injury to the NECK on March 3, 2014.* (Emphasis added).

¶ 22 The order makes no further specific findings to support or explain the denial of compensability as to the neck injury. As explained below, upon review of the entire record, we find this conclusion is clearly erroneous in view of the reliable, material, probative and substantial competent evidence. We also find that the order fails to make factual findings essential to its conclusion, namely, (1) that Claimant's expert, Dr. Blough, failed to base his opinion on objective findings; and (2) that Claimant's pre-existing neck condition precludes the compensability of his current injury.

¶ 23 While the order denying treatment is critical of Dr. Blough as having failed to refer to any *diagnostic studies* to support his opinion, the order does not find that Dr. Blough's opinion is unsupported by "objective findings." In fact, as quoted above, Dr. Blough did include specific objective findings based upon his physical examination of Claimant. While further diagnostic studies might have been a preferred method on which to make a determination of Claimant's condition, it is not disputed that, at the time Dr. Blough examined Claimant, Employer had refused to approve any treatment whatsoever for Claimant's neck based on its deni-

al of liability for the injury. Consequently, Claimant had been unable to obtain additional testing or diagnostic studies. Even so, contrary to the determination otherwise by the ALJ and the Commission, Claimant *did* produce "medical evidence supported by objective findings" of an injury to his neck that was caused by his March 2014 fall. It is noteworthy that the diagnostic testing later obtained by Employer's medical expert—Dr. Young—did show "moderate to severe disc space narrowing" in Claimant's cervical spine.

¶ 24 Although the order denying treatment includes a discussion suggesting that Claimant's injury could not have been "solely" caused by the March 2014 incident because Claimant had a pre-existing condition to his neck, there is no evidence in the record that Claimant's previous injury had not resolved prior to the March 2014 accident. Claimant was the only witness to testify at the July 7, 2014 hearing before the ALJ. He testified that when he slipped on the ice, he fell backward and hit his head hard on concrete after initially hitting his back and shoulder. Employer sent him that day to a medical clinic for evaluation. Although his head hurt, Claimant said he did not complain of head or neck pain at the initial visit because his back and shoulder pain was more severe. His neck pain and headaches worsened over the next few days, however, and he complained of his neck in follow-up visits to the same doctor in the next two weeks.

¶ 25 Medical records entered into evidence reflect that, since that time, he has consistently complained about his head and neck to other medical providers. Although he confirmed that he sustained a previous injury to his neck in a work-related accident in 2010, he said he fully recovered from that injury and returned to work full time six months later. He denied having any problem with his neck since that recovery until his March 2014 fall. Employer presented no evidence to counter this testimony. The ALJ made no specific finding that Claimant had a pre-existing neck condition that had not resolved prior to March 2014. Employer's medical expert did not address this issue. We find no evidence in the record that would support

a finding that, because of his previous neck injury, Claimant's current neck injury was not solely the result of his March 2014 accident.

¶ 26 Finally, the ALJ order suggests that Dr. Blough's report is insufficient to support a finding that Claimant's accident constituted a significant aggravation of his pre-existing neck condition. We agree with the ALJ's order on this point. We find, however, that this discussion point is irrelevant, because Claimant consistently asserted that his claim was for a new injury rather than an aggravation injury. The record reflects that Employer initially asserted that the injury was an "aggravation" in order to support its defense that it is entitled to apportionment. The evidence does not support such a finding or conclusion, however.

## CONCLUSION

¶ 27 For the reasons set forth above, we find that the denial of medical treatment to Claimant's neck based on the determination that he failed to prove a compensable injury by a preponderance of the evidence is clearly erroneous in view of the reliable, material, probative and substantial competent evidence revealed by the record as a whole. We further find that the order denying medical treatment to Claimant's neck is missing findings of fact on issues essential to its decision. Accordingly, we reverse the Commission's order denying medical treatment for an injury to Claimant's neck, and remand for further proceedings, to include appointment of a treating physician for the neck injury pursuant to 85A O.S. Supp.2014 § 56(B).

¶ 28 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

RAPP, P.J., and BARNES, J., concur.