FITZWILSON v. AT&T CORP.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:FITZWILSON v. AT&T CORP.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 FITZWILSON v. AT&T CORP.
2019 OK CIV APP 48
Case Number: 117280
Decided: 07/12/2019
Mandate Issued: 09/11/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 48, __ P.3d __

 



TERRI JEAN FITZWILSON, Petitioner,
v.
AT&T CORP., OLD REPUBLIC INSURANCE CO., and THE WORKERS' COMPENSATION COMMISSION, Respondents.





PROCEEDING TO REVIEW AN ORDER OF THE
WORKERS' COMPENSATION COMMISSION


HONORABLE P. BLAIR McMILLIN, ADMINISTRATIVE LAW JUDGE





VACATED AND REMANDED FOR FURTHER PROCEEDINGS





Darrel R. Paul, QUANDT LAW FIRM, Tulsa, Oklahoma, for Petitioner





Nichole S. Bryant, Matthew R. DeFehr, McANANY, VAN CLEAVE & PHILLIPS, P.A., Tulsa, Oklahoma, for Respondents







JANE P. WISEMAN, VICE-CHIEF JUDGE:



¶1 Claimant Terri Fitzwilson seeks review of an order of the Workers' Compensation Commission affirming the decision of an administrative law judge denying Claimant's claim as not compensable. After review, we vacate the order of the WCC and remand for further proceedings consistent with this Opinion.


FACTS AND PROCEDURAL BACKGROUND


¶2 Claimant filed a CC-Form 3 on December 8, 2016, for injuries to her back and right leg, which she alleged occurred on November 22, 2016, while she "was rolling forward in chair when it toppled over." Claimant's employer, AT&T Corp. (Employer), denied Claimant suffered an injury arising out of and in the course of her employment.


¶3 At trial held on February 6, 2018, Claimant described the accident this way: "We have roller chairs and we sit in groups so that we can ask each other questions during phone calls. I had rolled back to ask a question, when I went to roll forward, my chair fell over and I fell out of my chair." Claimant said she believes her right hip and buttocks struck the ground. Claimant testified she had four surgeries prior to this event. She had an L4-5 and L5-S1 fusion, she had hardware removed, she had another surgery in the same area, and she had hardware removed again. The surgeon she saw for her back was Dr. Hendricks in 2011. None of her surgeries involved the L3-4 disk. She has been seeing Dr. Martucci for pain management every three months. She experienced new symptoms after this fall--her pain levels were higher and she had pain radiating down her right leg. According to Claimant, her prior issues were in her left leg.


¶4 The ALJ denied compensability in an order filed February 27, 2018. The ALJ noted Claimant requested a hearing and "a finding of compensability to the lumbar spine in the form of an aggravation of a preexisting condition." Employer admits the incident occurred on November 22, 2016, but denies Claimant's claim is compensable and "asserts that her injury is degenerative and preexisting in nature and excepted from the definition of compensable injury pursuant to Title 85A O.S. §2(9)(b)(5) and (6)." Employer also "denies that the major cause of her degenerative condition is her employment."


¶5 The ALJ found Claimant has worked as a customer service representative for Employer for eight years. She testified she fell out of her chair after she rolled forward and was talking to another employee and she landed on her buttocks and right hip when she fell. Claimant "reported to her treating physicians thereafter that her chair had broken and caused her to fall to the floor." The ALJ noted: "Prior to the incident at work, Claimant received a significant amount of medical treatment for her lumbar spine to include numerous surgeries, injections, medications, and implantation of two spinal column [stimulators] as evidenced by the voluminous amount of records submitted by [Employer]." The ALJ explained that Claimant injured her lumbar spine in a work-related injury in 2001, resulting in her undergoing the following surgeries: (1) an L5-S1 diskectomy (Dr. Greg Wilson); (2) an L5-S1 fusion (Dr. Mark Hayes and Dr. Allen Fielding); (3) L4-5 fusion in 2003 (Dr. Randall Hendricks); (4) L4-5 and L5-S1 hardware removal in 2004 (Dr. Hendricks); (5) L4-5 and L5-S1 fusion in 2006 (Dr. Hendricks); and
(6) L4-5 hardware removal with revision decompression in 2008 (Dr. Hendricks). Dr. Hendricks released Claimant from his care for the 2001 injury on November 5, 2008, and she settled her workers' compensation "claim on Joint Petition for 30% permanent partial impairment to the lumbar spine on August 30, 2014."[1]


¶6 Claimant returned to Dr. Hendricks on December 22, 2010, after "she fell and twisted her low back going up stairs." The ALJ stated, "Claimant complained of mild hypesthesia on the dorsum of her right foot. Dr. Hendricks read her MRI of the lumbar spine on January 14, 2011, as normal and stated that she might be developing stenosis at L3-4, but was unable to truly confirm that finding []." Dr. Hendricks found Claimant was not a candidate for surgery and referred her to pain management.


¶7 The ALJ said:

Claimant began a pain management regimen at Pain Consultants on April 11, 2011 and reported low back pain radiating to her right side down to her large toe. She reported a burning sensation down her right leg and that her right leg twitched on her intake sheet. She was given Lortab and referred for a L5-S1 epidural steroid injection, which she had on April 13, 2011. She had an EMG study of her right lower extremity on
April 19, 2011, and the physician opined that her likely diagnosis was radiculopathy, but noted a possibility of plexopathy or peripheral neuropathy. She had additional injections at that level on May 11, 2011, July 20, 2011, and February 22, 2012. Up until 2016, Claimant tried various medications for nerve pain such as Lyrica and was switched to Norco 10 mg on November 17, 2012,[2] which she was still taking at the time of her work-related incident.


(Citation to the record omitted.)


¶8 The ALJ noted that Claimant had a spinal column stimulator implanted on December 6, 2011, and January 7, 2014, but they were removed on September 16, 2014. The ALJ stated, "Although Claimant testified at hearing that she had no further injections after 2011 until her work-related incident, she discussed resuming injection therapy with her pain management physician on October 15, 2013, October 14, 2014, May 11, 2015, [and] August 17, 2015." Four months before she fell from her chair, she "reported a 10 out of 10 pain on a VAS scale without medication," and 2 months before the incident Claimant "reported a 8-9 out of 10 pain on a VAS scale without medication" and she also reported she was having back pain which radiated down her right leg.


¶9 Claimant contacted her primary care physician Dr. Patrick Vanschoyck "on December 1, 2016 and reported that she fell out of a chair at work and requested an increase in her medication and an injection." She saw Dr. Vanschoyck the next day "report[ing] pain in her low back radiating to her right foot and received an injection and medication." On December 6, 2016, she returned to Pain Consultants for a L5-S1 epidural steroid injection for her back pain and right leg pain. On January 31, 2017, she had another injection on the L3-4 level.


¶10 On December 28, 2016, Claimant underwent an MRI of her lumbar spine. Dr. Hendricks found that Claimant had "L3-4 stenosis, worse on the right, with impingement and scar tissue at L4-5." On February 27, 2017, Dr. Hendricks "noted some quadriceps and dorsiflexor weakness of the ankle of the right side, sensory deficit mixed at L4 and L5, and a positive sciatic stretch maneuver on his examination." On March 21, 2017, Dr. Hendricks performed a laminectomy of L3, a revision laminectomy of L4-5 and L5-S1, and neurolysis.


¶11 The ALJ stated that in his report, Dr. Hendricks found "Claimant sustained a significant and identifiable aggravation of her preexisting injury." The ALJ further stated that in his deposition, when asked about the cause of her most recent lumbar surgery, Dr. Hendricks said "that it may have been due to some adjacent-level disease and her fall from the chair." He recognized "that adjacent-level disease can result from the passage of time and ongoing deterioration or that a single-event incident may aggravate it substantially." He noted there was no stenosis at the L3-4 level on her January 2011 MRI and "found that her fall had aggravated her severe canal stenosis."


¶12 Employer submitted the report of Dr. Gillock, who "found no objective medical evidence of a work-related injury." He concluded, "Claimant has a preexisting degenerative condition and that she did not sustain[] a significant and identifiable aggravation of that condition as a result of her employment."


¶13 The ALJ stated:

Claimant testified that she was able to work and perform activities of daily living with her pain medication from 2011 until incident of November 22, 2016. However, medical records indicate she had two trials of a spinal column stimulator in that time period and also inquired as to resuming injection therapy in 2013, 2014, and 2015. Those records also report that Claimant did not undergo further injections due to money concerns or being able to take off work (during that time period she also underwent surgery to her foot/ankle and left arm). Claimant also testified that prior to November of 2016 her radicular pain was only to her left leg, which is entirely inaccurate based on the history contained in the medical records that documented right leg radiculopathy particularly after her 2010 fall. Furthermore 2 months prior to her work-related incident, Claimant reported a 8-9 out of 10 pain in her back radiating to her right leg without medication.


The ALJ found that, in light of Claimant's medical records, her testimony was less than credible. The ALJ further found "that Dr. [Hendricks'] opinion is based on inaccurate history as her right leg radiculopathy was clearly present prior to November 22, 2016." The ALJ determined, "age-related degenerative conditions, including stenosis, are specifically excepted from the definition of compensable injury pursuant to Title 85A O.S. §2(9)(b)(5)." The ALJ ascertained,
"Dr. Hendricks clearly noted on his operative report of March 21, 2017 that Claimant did not have a disc herniation at L3-4 only stenosis."


¶14 The ALJ was "not persuaded that [Claimant's] employment was the sole or major cause of her resulting lumbar spine deterioration or degeneration that ultimately necessitated surgery." The ALJ finished, "After assigning weight and credibility to all evidence submitted, I find Claimant has failed to prove by a preponderance of the evidence she sustained a compensable injury to her lumber spine on November 22, 2016." Consequently, Claimant's claim for compensation was denied.


¶15 Claimant appealed to the WCC arguing the ALJ's order was against the clear weight of the evidence and contrary to law because Employer "stipulated to an 'incident' occurring at work on 11/22/2016," and the ALJ's "finding of no injury is against the clear weight of the evidence."


¶16 The WCC affirmed the ALJ's decision. Claimant now seeks review of the WCC's decision.


STANDARD OF REVIEW


¶17 "The Supreme Court may modify, reverse, remand for rehearing, or set aside the judgment or award" of the WCC on a finding that the judgment or award was:

1. In violation of constitutional provisions;
2. In excess of the statutory authority or jurisdiction of the Commission;
3. Made on unlawful procedure;
4. Affected by other error of law;
5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;
6. Arbitrary or capricious;
7. Procured by fraud; or
8. Missing findings of fact on issues essential to the decision.


85A O.S. Supp. 2018 § 78(C). "[W]ith respect to issues of fact, the [WCC's] order will be affirmed if the record contains substantial evidence in support of the facts upon which it is based and is otherwise free of error." Mullendore v. Mercy Hosp. Ardmore, 2019 OK 11, ¶ 13, 438 P.3d 358.


ANALYSIS


¶18 Claimant first asserts the WCC erred because it based its denial of compensability on 85A O.S. § 2(9)(b)(5) and did not apply 85A O.S. § 2(9)(b)(6) which addresses aggravation. Title 85A O.S. Supp. 2013 § 2(9)(b)(5), the law in effect when Claimant fell from the chair, provided "compensable injury" does not include a "strain, degeneration, damage or harm to, or disease or condition of, the eye or musculoskeletal structure or other body part resulting from the natural results of aging, osteoarthritis, arthritis, or degenerative process including, but not limited to, degenerative joint disease, degenerative disc disease, degenerative spondylosis/spondylolisthesis and spinal stenosis, or . . . ." 85A O.S. Supp. 2013 § 2(9)(b)(5) (emphasis added). The ALJ relied on this provision in denying compensability.


¶19 Claimant directs our attention to § 2(9)(b)(6), which provides "compensable injury" does not include "any preexisting condition except when the treating physician clearly confirms an identifiable and significant aggravation incurred in the course and scope of employment." Claimant asserts:

In the order under review, the absence of any discussion of § 2(9)(b)(6) creates an error of law in and of itself. This is of course because, while it appears that § 2(9)(b)(5) intends that the workers['] compensation system not be responsible for taking care of the slow, eventual [e]ffects of aging, § 2(9)(b)(6) recognizes that an on-the-job injury can activate or accelerate even a pre-existing condition to the point that it can only fairly be deemed work-related in its ultimate physical disturbance. As such, it is appropriate that the system does provide benefits for those significant and identifiable aggravation injuries leaving an injured worker in a different and potentially far worse physical position than before the on-the-job injury.


Claimant goes on to argue "§ 2(9)(b)(6) does not preclude or exempt from compensable aggravation injuries even those § 2(9)(b)(5) conditions that may have previously been the 'natural results of aging.'"


¶20 Support for Claimant's reasoning can be found in the recent cases of Ayisi v. Sequel Youth & Family Services, LLC, 2019 OK CIV APP 21, ¶ 5, 437 P.3d 216. Before discussing this case, we must look at the first appeal in that case, Sequel Youth & Family Services LLC v. Ayisi, 2018 OK CIV APP 7, 412 P.3d 107 (Ayisi 1), in which the Court took the opportunity to expatiate about § 2(9)(b)(5), § 2(9)(b)(6), and "major cause." In Ayisi 1, the Court was confronted with whether an ALJ properly found a claim compensable after claimant fell and struck both knees. Id. ¶¶ 1-2. The "[c]laimant testified she was not having any problems with her knees prior to the accident, though she testified she had knee surgery performed on her right knee--a 'right knee arthroscopic procedure'--in the year 2000." Id. ¶ 3. She testified she had no restrictions on her right knee, had been working for 16 years before she fell, and had never received any treatment on her left knee. Id. The claimant's employer denied that the injury "'was solely caused by her accident'" and argued the injury was specifically excluded by 85A O.S. § 2(9)(b)(5) "because '[t]he only diagnosis in any medical record is osteoarthritis.'" Id. ¶ 5.


¶21 The Ayisi 1 Court noted that a compensable injury as defined by 85A O.S. Supp. 2014 § 2(9)(a) "'means damage or harm to the physical structure of the body . . . caused solely as the result of either an accident, cumulative trauma or occupational disease arising out of the course and scope of employment.'" Id. ¶ 12. It noted that the Legislature specifically excluded:

"(5) any strain, degeneration, damage or harm to, or disease or condition of, the eye or musculoskeletal structure or other body part resulting from the natural results of aging, osteoarthritis, arthritis, or degenerative process including, but not limited to, degenerative joint disease, degenerative disc disease, degenerative spondylosis/spondylolisthesis and spinal stenosis, or

(6) any preexisting condition except when the treating physician clearly confirms an identifiable and significant aggravation incurred in the course and scope of employment."


Id. (quoting 85A O.S. Supp. 2014 § 2(9)(b)(5-6)). The Court cited Estenson Logistics v. Hopson, 2015 OK CIV APP 71, 357 P.3d 486, a case also cited in this case by Claimant:

a separate division of this Court stated that a claimant's "degenerative joint disease in his left hip" was compensable if the claimant "show[ed] that there was physical damage or harm caused by an on-the-job accident and that his treating physician confirmed an identifiable and significant aggravation." Id. ¶ 10. Thus, the Hopson Court, in effect, read subsections 2(9)(b)(5) and (6) together such that the claimant's degenerative joint disease constituted a "preexisting condition" subject to the exception set forth in § 2(9)(b)(6).


Ayisi, 2018 OK CIV APP 7, ¶ 13. The Ayisi 1 Court noted that pursuant to the Administrative Workers' Compensation Act (AWCA), "the term 'preexisting condition' has a limited definition" and "'means any illness, injury, disease, or other physical or mental condition, whether or not work-related, for which medical advice, diagnosis, care or treatment was recommended or received preceding the date of injury[.]'" Id. ¶ 15 (quoting 85A O.S. Supp. 2014 § 2(36)). The Ayisi 1 Court noted that the version of § 2 in effect when the claimant was injured did not "contain[] any mention of the 'major cause' test used, in past cases, to differentiate those degenerative conditions which are not compensable because they are the natural result of aging from those which are compensable because they are the result of the employment." Id. ¶ 20.[3] The Ayisi 1 Court concluded:

If possible, an interpretation of the "caused solely" language found in § 2(9)(a) which, among other things, gives effect to this major cause provision and harmonizes it with other provisions in the act, which avoids rendering § 2(9)(b)(5) a vain and useless provision, and which avoids serious constitutional pitfalls, will be adopted. In the context of the present case involving osteoarthritis, we conclude it is the legislative intent that osteoarthritis resulting from the natural results of aging is not compensable unless the employment is the major cause of the deterioration or degeneration and such a finding is supported by objective medical evidence.


Id. ¶ 23 (footnote omitted). The Court vacated the WCC's order and remanded the "case to the ALJ for further proceedings." Id. ¶ 24.


¶22 In Ayisi v. Sequel Youth & Family Services, LLC, 2019 OK CIV APP 21, 437 P.3d 216 (Ayisi 2), this Court reviewed the WCC's decision after the case had been remanded. This Court noted that the claimant's "medical evidence generated after the accident revealed that the primary injury or condition in [c]laimant's knees is osteoarthritis." Id. ¶ 1. The WCC's decision affirmed the ALJ's decision denying the claim for compensation because her "employment was not the major cause of her osteoarthritis in her knees." Id. ¶ 4. "The issue arose whether [c]laimant should at least be found to have sustained a compensable injury to her right knee as a result of an aggravation of a preexisting condition under § 2(9)(b)(6)." Id. The WCC concluded that this Court in Ayisi 1 "'expressly held that [c]laimant's osteoarthritis is compensable only if her employment is the major cause of the degeneration in her knees.'" Id. The Ayisi 2 Court instructed:

We take this opportunity to clarify that § 2(9)(b)(6) is applicable to cases involving preexisting conditions where "the treating physician clearly confirms an identifiable and significant aggravation [of that preexisting condition] incurred in the course and scope of employment." Any implication to the contrary in the prior appeal regarding the effect of § 2(9)(b)(6) is in error.


Id. ¶ 5 (footnote omitted). The Court continued:

With regard to Claimant's left knee, however, we explained in the prior appeal that the ALJ concluded there was no "preexisting condition as defined in the AWCA[.]" Ayisi, [2018 OK CIV APP 7], ¶ 15. Thus, we concluded, at least impliedly, that the lower court erred in awarding compensation for the left knee under § 2(9)(b)(6). We further concluded that Claimant could still receive compensation for her left knee under § 2(9)(b)(5) if the major cause of her osteoarthritic condition in her left knee was her employment. Because the trial court's determination on remand that the major cause of Claimant's osteoarthritis is not work-related is supported by substantial evidence, we conclude compensation for Claimant's left knee was appropriately denied on remand. See Gillispie v. Estes Exp. Lines, Inc., 2015 OK CIV APP 93, ¶ 15, 361 P.3d 543 (On fact questions, this Court will review the record to determine if there is substantial evidence to support the decision.).


Id. ¶ 6 (footnote omitted). The Ayisi 2 Court did not reach the same conclusion regarding the right knee. The Court noted that, on remand, the ALJ determined "that the major cause of [c]laimant's condition in her right knee is not work-related," and the Court concluded the ALJ's determination on this issue was "also supported by substantial evidence." Id. ¶ 7. The Court noted, however, the ALJ had previously found the claimant sustained an aggravation of preexisting condition "based on the fact that [c]laimant had an arthroscopic procedure performed on her right knee approximately sixteen years before the accident." Id. The Court concluded, "Regardless of the distance in time between the accident and this procedure, however, the findings that Claimant had a 'preexisting condition' in her right knee at the time of the accident, and that this is the condition for which treatment was provided, are supported by substantial evidence." Id. The Court noted that it was "undisputed the treating physician confirmed an identifiable and significant aggravation occurred to that condition in the course and scope of [c]laimant's employment." Id. This Court held the ALJ appropriately found the claimant sustained a compensable injury pursuant to § 2(9)(b)(6). Id.


¶23 We find the reasoning of Ayisi 2 persuasive and applicable to this case. Even if Claimant's work-related incident, which Employer admitted occurred, was not "the sole or major cause of her resulting lumbar spine deterioration or degeneration that ultimately necessitated surgery" and is excluded from being compensable pursuant to § 2(9)(b)(5), the WCC was required to determine if her injury was compensable pursuant to § 2(9)(b)(6) because Claimant's treating physician, Dr. Hendricks, "found that Claimant sustained a significant and identifiable aggravation of her preexisting injury."


¶24 We vacate the decision of the WCC and remand the case to the ALJ to determine if Claimant's injury is compensable pursuant to § 2(9)(b)(6) in light of Dr. Hendricks' finding regarding the preexisting condition and Claimant's prior reports of pain in her back and right leg. The ALJ noted that Claimant's testimony regarding lack of pain in her right leg was less than credible. However, Claimant's prior complaints of right leg and back pain as noted in the medical records are relevant to whether she had a preexisting condition as defined by the AWCA.


CONCLUSION


¶25 The decision of the WCC is vacated and the case is remanded to the ALJ for further proceedings consistent with this Opinion.


¶26 VACATED AND REMANDED FOR FURTHER PROCEEDINGS.




BARNES, P.J., and RAPP, J., concur.





FOOTNOTES




[1] The file stamp date of the Joint Petition order in the record is August 30, 2004.





[2] Employer's exhibit indicates the date for the switch was November 7, 2012.





[3] Title 85A O.S. § 2(9)(a) was amended by Laws 2019, HB 2367, c. 476, § 1, effective May 28, 2019, to provide: "'Compensable injury' means damage or harm to the physical structure of the body, or damage or harm to prosthetic appliances, including eyeglasses, contact lenses, or hearing aids, of which the major cause is either an accident, cumulative trauma or occupational disease arising out of the course and scope of employment." (Emphasis added.)










 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2015 OK CIV APP 71, 357 P.3d 486, ESTENSON LOGISTICS v. HOPSON
Discussed
 2015 OK CIV APP 93, 361 P.3d 543, GILLISPIE v. ESTES EXPRESS LINES, INC.
Discussed
 2018 OK CIV APP 7, 412 P.3d 107, SEQUEL YOUTH & FAMILY SERVICES LLC v. AYISI
Discussed at Length
 2019 OK CIV APP 21, 437 P.3d 216, AYISI v. SEQUEL YOUTH & FAMILY SERVICES, LLC
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2019 OK 11, 438 P.3d 358, MULLENDORE v. MERCY HOSPITAL ARDMORE
Discussed
Title 85A. Workers' Compensation
 Cite
Name
Level

 85A O.S. 2, Definitions
Discussed at Length
 85A O.S. 78, Workers' Compensation Commission - Appeal to Commission - Appeal to Supreme Court
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA